U.S. Department of Justice
United States Marshals Service

**WEAPONS QUALIFICATION AND FAMILIARIZATION RECORD/AUTHORIZATION TO USE PERSONALLY OWNED WEAPON**

| 1. Name of Employee *(Last, First, MI)* | 2. District | 3. Duty Station | 4. Date Course Fired *(mm/dd/yy)* |
|---|---|---|---|

**5. Title of Employee**

Deputy U.S. Marshal

**6. Weapon is Property of:**

| | USMS | Shooter | Other *(Specify:)* |
|---|---|---|---|
| 1. | ☐ | ☐ | ☐ |
| 2. | ☐ | ☐ | ☐ |
| 3. | ☐ | ☐ | ☐ |
| 4. | ☐ | ☐ | ☐ |

| 7. Make of Weapon | 8. Model | 9. Type | | | | 10. Caliber/ Gauge | 11. Barrel Length | 12. Serial No. |
|---|---|---|---|---|---|---|---|---|
| | | HAND-GUN | SHOT-GUN | RIFLE | OTHER *(Specify)* | | | |
| 1. | | ☐ | | | | | | |
| 2. | | ☐ | ☐ | ☐ | ☐ | | | |
| 3. | | ☐ | ☐ | ☐ | ☐ | | | |
| 4. | | ☐ | ☐ | ☐ | ☐ | | | |

| 13. Course of Fire | | | 14. Type of Ammunition *(Brand, Caliber, Weight, Configuration)* | 15. Score Fired | 16. Initials of Shooter |
|---|---|---|---|---|---|
| | QUALIFICATION | FAMILIARIZATION | | | |
| 1. | ☐ | ☐ | 1. | 1. | |
| 2. | ☐ | ☐ | 2. | 2. | |
| 3. | ☐ | ☐ | 3. | 3. | |
| 4. | ☐ | ☐ | 4. | 4. | |

**17. Qualification Level**

| 1 | 2 | 3 | 4 | |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | *Distinguished Expert (300)* |
| ☐ | ☐ | ☐ | ☐ | *Expert (285-299)* |
| ☐ | ☐ | ☐ | ☐ | *Sharpshooter (255-284)* |
| ☐ | ☐ | ☐ | ☐ | *Marksman (210-254)* |
| ☐ | ☐ | ☐ | ☐ | *DNQ (Below 210)* |

**18. Use of Deadly Force and Weapons Policies:**
*I have read and understand the current United States Marshals Service Weapons Policy and Uniform Deadly Force Policy for the Department of Justice.*

Signature _____   Date _____

**19. Verified by Firearms Instructor:**
*This certifies that qualification, qualification levels, scores, weapons, and ammunitions used are authorized and as indicated herein.*

Signature _____   Date _____

**20. Authorization**
The firearm described within has been inspected by the USMS Firearms Instructor (named in Block 19) and:

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Is | ☐ | ☐ | ☐ | ☐ |
| Is *Not* | ☐ | ☐ | ☐ | ☐ |

*Authorized for use in the performance of duties of a U.S. Marshal or a Deputy U.S. Marshal.*

**21. Authorized By:**

Authorizing Official

Signature _____   Date _____

Title _____

Copies: Original - District/Office
        Copy to Employee

**PREVIOUS EDITIONS OBSOLETE**

Form USM-333
(Rev. 3/96)
Automated 4/00

Section J - Attachment 2(B)(1)

# HANDGUN QUALIFICATION COURSE OF FIRE
## FOR COURT SECURITY OFFICERS (CSOs)
### (Revised April 1991)

This course is designed for realism and no deviation of ammunition, clothing, stance, or scoring is permitted. This qualification course of fire will be conducted in accordance with the following:

A.   **Weapon.** Smith & Wesson, model 10, .38-caliber pistol with a 4-inch barrel.

B.   **Ammunition.** Fifty rounds semi-packeted hollow point, 110 grain (Treasury load), or Jacketed hollow point, 125 grain. All ammunition to be loaded from pocket, pouch, or belt.

C.   **Firing Distance.** Firing distances shall be 3, 7, and 15 yards for all CSOs.

D.   **Target.** The Trans Star II target will be used for handgun qualification fire for all CSOs.

E.   **Clothing.** Normal working attire will include a jacket or coat (not required in Puerto Rico) with sufficient length to cover the weapon.

F.   **Scoring.** Target is marked from 2 to 5 points. Score as indicated for a maximum of 250 points.

G.   **Qualification.**

1.   175-212 - - - - - - - - - - - Marksman
2.   213-237 - - - - - - - - - - - Sharpshooter
3.   238-249 - - - - - - - - - - - Expert
4.   250     - - - - - - - - - - - Distinguished Expert

H.   **Safety.**

1.   Due to range safety standards, qualification will be shot with a Marshals Service approved weapon (as indicated above) and leather gear. Only an open-top belt holster, mounted on the shooter's strong hand side, will be used.

2.   All persons will wear OSHA approved ear and eye protectors while actually engaged in firearms training or qualifications.

I.   Sequence Fire.  All stages will be fired, double action, from the modified weaver stance, upon command of the Range Officer, or at the turn of the target. All reloads should be made from the pocket.

1.   Three Yard Line.  On command, the weapon will be quickly drawn from the holster in a safe manner and fired, double action, from the modified weaver stance.  (Eye level strong foot to the rear in field interview position, strong hand supported by weak.)

a.   Load with six rounds and have six rounds available for reloading from the pouch or pocket.

b.   Upon the command of the Range Officer, or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire two rounds to the center of the mass area of the target, and holster the weapon.  The time is three seconds.

c.   Repeat stage b. above.

d.   Upon command of the Range Officer, or at the turn of the target, shooters draw and fire their fifth and sixth rounds, unload, reload with six rounds and fire two rounds to the center of the mass area of the target.  At the conclusion of the firing, holster weapon.  Time limit is 20 seconds.

e.   Repeat stage b. above.

f.   Repeat stage b. above.

g.   Shooters unload and holster an empty weapon.

2.   <u>Seven Yard Line</u>.  On command, or at the turn of the target, the weapon will be quickly drawn from the holster in a safe manner, and fired, double action, with two hand hold, from the extended arm position, using the sights.

### STAGE 1

a.   Load with six rounds and have 2 rounds available for reloading from pocket or pouch.

b.   Upon command of the Range Officer, or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire two rounds to the center mass area of the target.  Holster the weapon. Time limit is five seconds.

c.   Repeat stage b. above.

d.   Upon command or the Range Officer, or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire the fifth and sixth rounds, unload, reload with two rounds and fire two shots.  Unload and holster empty weapon.  Time limit is 20 seconds.

### STAGE 2

a.   Load with six rounds and have 12 rounds available for reloading from pocket or pouch.

b.   Upon command of the Range Officer, or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire two rounds to the center of the mass area and one shot to the head area of the target.  Holster the weapon. Time limit is six seconds.

c.   Upon command of the Range Officer, or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire two rounds to the center of the mass and one shot to the head area of the target.  Unload, reload with six rounds and fire two rounds to the center mass and one shot to the head area of the target.  Holster the weapon at the conclusion of this phase.  Time limit is 25 seconds.  (Note:  Allow time to reload pouches if applicable.)

d.   Upon command or the Range Officer, or at the turn of the target, draw, fire two rounds to the center of the mass and one shot to the head area of the target, unload, reload with six rounds from the pocket or pouch and fire two rounds to the center mass and one round to the head area of the target.  Holster the weapon at the conclusion of this phase.  Time limit is 25 seconds.

e.   Upon command of the Range Officer, or at the turn of the target, draw, fire two rounds to the center mass and one shot to the head area of the target.  Time limit is six seconds.

f.   Unload and holster an empty weapon. Once the line is secure, move down range and score the target.

3.   Fifteen Yard Line.  On command, the weapon will be quickly drawn in a safe manner and fired, double action, from the point shoulder position, with two handed hold and using the sights.

a.  Load with six rounds and holster. Have six rounds available for reloading from either pouch or pocket.

b.  Upon command of the Range Officer, or at the turn of the target, quickly draw the weapon in a safe manner and fire two rounds to the center mass area of the target and holster the weapon.  Time limit is five seconds.

c.  Repeat stage b. above.

d.  Upon command of the Range Officer, or at the turn of the target, quickly draw the weapon in a safe manner and fire the fifth and sixth rounds, unload, reload with six rounds, fire two rounds to the center mass area of the target and holster the weapon. Time limit is 25 seconds.

e.  Repeat stage b. above.

f.  Repeat stage b. above.  Shooters unload and holster an empty weapon. Once the line is secure, shooters will move down range and score the targets.

J.  <u>Recording Scores</u>.

1.  Once targets have been scored, scores should be verified and recorded on the Weapons/Qualification and Familiarization Record Form (USM-333) by the Range Officer or Instructor.

2.  A copy of the completed form should be forwarded to the CSO Program for inclusion in the Personnel Security File.

**United States Marshals Service**
**OFFICE OF TRAINING**



## CSO SEMI-AUTO HANDGUN QUALIFICATION COURSE
11/21/2000

General Rules:

1.    This qualification course will be fired with an issued handgun as approved by the Judicial Security Division. Appropriate ammunition will be used, as specified in the USMS Ammunition Supply Letter.

2.    Participants will wear their normal working attire and equipment. This will include a jacket of sufficient length to conceal the weapon, as well as the holster and spare ammunition carrier used on duty.

3.    Each stage of fire will begin with the weapon in the holster, with all retention devices (thumb-break, strap, etc.) Secured. All firing will be done two-handed, strong hand supported by the weak.

4.    This is a 50 round course of fire, using the Trans-Tar II target. There are 250 possible points, with a minimum qualifying score of 175 (70%) or above. The following are the scoring classifications:

|         |     |                       |
|---------|-----|-----------------------|
| 250     | DE  | (Distinguished Expert) |
| 238-249 | EX  | (Expert)              |
| 213-237 | SS  | (Sharpshooter)        |
| 175-212 | MM  | (Marksman)            |
| 174 or below | DNQ | (Did Not Qualify) |

5.    Alibi shots are allowed only in the case of bad ammunition, target malfunction, instructor error or weapon malfunction. If the shooter fails to get off a required round for any other reason (failure to make a proper draw, missing a reload, etc.), they may _not_ "make up" the round by firing extra shots on a later facing. Five points will be deducted from the score for each round missed.

6.    Scores will be verified and recorded on Form USM-333, *Weapons Qualification Record*. A copy of the completed form will be forwarded to the Judicial Security Division for inclusion in the Personnel Security File.

Section J - Attachment 2(B)(3)

**Stage 1 – 3 yards**
**(12 rounds total)**

Load with one six-round magazine, with another six-round magazine available for reloading.
1st facing- Draw and fire 2 rounds center-mass in 3 seconds.
Scan and safely holster.
2nd facing- Draw and fire 2 rounds center-mass in 3 seconds.
Scan and safely holster.
3rd facing- Draw and fire 2 rounds center-mass, reload and fire 2 more rounds center-mass. All in 20 seconds.
Scan and safely holster.
4th facing- Draw and fire 2 rounds center-mass in 3 seconds.
Scan and safely holster.
5th facing- Draw and fire 2 rounds center-mass in 3 seconds.
Properly clear and holster an empty weapon.

**Stage 2 – 7 Yards**
**(8 rounds total)**

Load with one six-round magazine, with a two-round magazine available for reloading.
1st facing- Draw and fire 2 rounds center-mass in 5 seconds.
Scan and safely holster.
2nd facing- Draw and fire 2 rounds center-mass in 5 seconds.
Scan and safely holster.
3rd facing- Draw and fire 2 rounds center-mass, reload and fire 2 more rounds center-mass. All in 20 seconds.
Properly clear and holster an empty weapon.

**Stage 3 – 7 Yards**
**(18 rounds total)**

Load with one six-round magazine, with two more six-round magazines available for reloading.
1st facing- Draw and fire 3 rounds (2C/1H) in 6 seconds.
Scan and safely holster.
2nd facing- Draw and fire 3 rounds (2C/1H), reload and fire 3 more rounds (2C/1H) in 20 seconds.
Scan and safely holster.
3rd facing- Draw and fire 3 rounds (2C/1H), reload and fire 3 more rounds (2C/1H) in 20 seconds.
Scan and safely holster.
4th facing- Draw and fire 3 rounds (2C/1H) in 6 seconds.
Properly clear and holster an empty weapon.

**Stage 4   15 Yards**
**(12 rounds total)**

Load with one six-round magazine, with another six-round magazine available for reloading.
1st facing- Draw and fire 2 rounds center-mass in 6 seconds.
Scan and safely holster.
2nd facing- Draw and fire 2 rounds center-mass in 6 seconds.
Scan and safely holster.
3rd facing- Draw and fire 2 rounds center-mass, reload and fire 2 more rounds center-mass. All in 25 seconds.
Scan and safely holster.
4th facing- Draw and fire 2 rounds center-mass in 6 seconds.
Scan and safely holster.
5th facing- Draw and fire 2 rounds center-mass in 6 seconds.
Properly clear and holster an empty weapon.

11/21/2000

RANGE COMMANDS

## STAGE 1 - 3 YARD LINE

Shooters on the line, with a six-round magazine prepare your weapon for duty carry.  Have at least one more six-round magazine available for a reload.

This is your 3-yard stage of fire. It consists of 12 rounds, all fired center-mass. On the first two facings of the target, draw and fire 2 rounds in 3 seconds (2-handed shooting). Then scan and holster. On the third facing, draw and fire 2 rounds, reload and fire 2 more rounds, all in 20 seconds. Then scan and holster. On the last two facings, draw and fire 2 rounds in 3 seconds, then scan and holster.

**IS THE LINE LOADED? THE LINE IS LOADED AND READY.  2 ROUNDS IN 3 SECONDS. WATCH YOUR THREAT.**

(One 3 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 3 SECONDS. WATCH YOUR THREAT.**

(One 3 second facing)

**SCAN AND HOLSTER.  FIRE 2 ROUNDS, RELOAD AND FIRE 2 MORE ROUNDS IN 20 SECONDS. WATCH YOUR THREAT.**

(One 20 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 3 SECONDS. WATCH YOUR THREAT.**

(One 3 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 3 SECONDS. WATCH YOUR THREAT.**

(One 3 second facing)

**PROPERLY CLEAR AND HOLSTER AN EMPTY WEAPON.**

(Move targets or shooters to the 7-yard line)

11/21/2000

RANGE COMMANDS

### STAGE 2 - 7 YARD LINE

Shooters on the line, with a six-round magazine, prepare your weapon for duty carry. Have a two-round magazine available for reloading.

This is your first 7-yard stage of fire, consisting of 8 rounds. All firing will be center-mass. On the first two facings of the target, draw and fire 2 rounds (two-handed) in 5 seconds, then scan and holster. On the next facing, you will have 20 seconds to draw and fire 2 rounds (two-handed), reload with a two-round magazine and fire two more rounds, center-mass. Then scan and holster a safe and empty weapon.

**IS THE LINE LOADED?  THE LINE IS LOADED AND READY.  2 ROUNDS IN 5 SECONDS. WATCH YOUR THREAT.**

(One 5 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 5 SECONDS. WATCH YOUR THREAT.**

(One 5 second facing)

**SCAN AND HOLSTER. FIRE 2 ROUNDS, RELOAD AND FIRE 2 MORE ROUNDS IN 20 SECONDS. WATCH YOUR THREAT.**

(One 20 second facing)

**PROPERLY CLEAR AND HOLSTER AN EMPTY WEAPON.**

Targets may be scored at this point, dividing the course into one segment of 20 rounds (100 possible points) and one segment of 30 rounds (150 possible points.) Scoring may also be done at the end of the course of fire, with 50 rounds on one target.

11/21/2000

## STAGE 3 - 7 YARD LINE

Shooters on the line, with a six-round magazine, prepare your weapon for duty carry. Have another six-round magazine available for reloading.

This is your second 7-yard stage of fire, consisting of 18 rounds. All firing will be two to the chest and one to the head. On the first facing, draw and fire 3 rounds (2 to the chest, 1 to the head) in 6 seconds. Then scan and holster. On the next facing, draw and fire 3 rounds (2 to the chest, 1 to the head), reload and fire 3 more rounds (2 to the chest, 1 to the head) in 25 seconds, then scan and holster. On the next facing, again draw and fire 2 to the chest, 1 to the head, reload and fire 2 to the chest and 1 to the head, also in 25 seconds. On the final facing, draw and fire 3 rounds (2 to the chest, 1 to the head) in 6 seconds.  Then clear and holster a safe and empty weapon.

**IS THE LINE LOADED?  THE LINE IS LOADED AND READY.  2 TO THE CHEST, 1 TO THE HEAD IN 6 SECONDS.**
**WATCH YOUR THREAT.**

(One 6 second facing)

**SCAN AND HOLSTER. 2 TO THE CHEST, 1 TO THE HEAD, RELOAD, THEN 2 TO THE CHEST, 1 TO THE HEAD. ALL IN 25 SECONDS.**
**WATCH YOUR THREAT.**

(One 25 second facing)

**SCAN AND HOLSTER. AGAIN FIRE 2 TO THE CHEST, 1 TO THE HEAD, RELOAD, THEN 2 TO THE CHEST, 1 TO THE HEAD. ALL IN 25 SECONDS.**
**WATCH YOUR THREAT.**

(One 25 second facing)

**SCAN AND HOLSTER. 2 TO THE CHEST, 1 TO THE HEAD IN 6 SECONDS.**
**WATCH YOUR THREAT.**

(One 6 second facing)

**PROPERLY CLEAR AND HOLSTER AN EMPTY WEAPON.**

(Move targets or shooters to the 15-yard line)

11/21/2000

## STAGE 4  – 15 YARD LINE

Shooters on the line, with a six-round magazine, prepare your weapon for duty carry. Have another six-round magazine available for reloading.

This is your 15-yard stage of fire, consisting of 12 rounds. All shooting will be two-handed, center-mass. On the first two facings, draw and fire 2 rounds in 6 seconds, then scan and holster. On the next facing, draw and fire 2 rounds, reload and fire  more rounds in 25 seconds, then scan and holster. On the last two facings, draw and fire 2 rounds in 6 seconds, 2 rounds in 6 seconds. Then properly clear and holster a safe and empty weapon.

**2 ROUNDS IN 6 SECONDS.**
**WATCH YOUR THREAT.**

(One 6 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 6 SECONDS.**
**WATCH YOUR THREAT.**

(One 6 second facing)

**SCAN AND HOLSTER.  2 ROUNDS, RELOAD, 2 ROUNDS IN 25 SECONDS.**
**WATCH YOUR THREAT.**

(One 25 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 6 SECONDS.**
**WATCH YOUR THREAT.**

(One 6 second facing)

**SCAN AND HOLSTER. 2 ROUNDS IN 6 SECONDS.**
**WATCH YOUR THREAT.**

(One 6 second facing)

**PROPERLY CLEAR AND HOLSTER A SAFE AND EMPTY WEAPON.**

A total of fifty rounds fired for a possible score of 250 points.

11/21/2000



**UNITED STATES MARSHALS SERVICE**
Judicial Security Division
Judicial Protective Services

---

**SUBJECT:**   Handgun Qualification Course of Fire for Court Security Officers (CSOs)

This course of fire is designed for realism and no deviation of ammunition, clothing, stance, or scoring is permitted. This qualification course of fire shall be conducted in accordance with the following:

A.   <u>Weapon</u>: .38 caliber revolvers as issued and approved by the Judicial Security Division, Judicial Protective Services.

B.   <u>Ammunition</u>. Fifty rounds, 38 Special, 158 gr. lead hollow points (LHP) +P. All ammunition must be loaded from the pocket, pouch, belt loops or speed loaders, whichever is carried on duty.

C.   <u>Firing Distance</u>. Firing distances shall be 3, 7, and 15 yards for all CSOs.

D.   <u>Target</u>. The Trans Star II target will be used for handgun qualification fire for all CSOs.

E.   <u>Clothing</u>. Normal CSO work attire is required. The length of the CSO's jacket or coat must properly cover the weapon.

F.   <u>Scoring</u>. The target is marked from two to five points. Score as indicated for a maximum of 250 points.

G.   <u>Qualification</u>

    1.   175-212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Marksman
    2.   213-237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Sharpshooter
    3.   238-249 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Expert
    4.   250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Distinguished Expert

Judicial Protective Services
*(Revised July 7, 2000)*

H.    Safety.

1.    Due to range safety standards, qualification will be shot with a Marshals Service approved weapon, as indicated above, and leather gear.  Only an open top belt holster mounted on the shooter's strong hand side can be used.

2.    Each person shall wear *OSHA* approved ear and eye protectors while actually engaged in firearms training or qualification.

Sequence Fire.  All stages will be fired, double action, upon command of the Range Officer or at the turn of the target.  The retention snap on the holster must be secured.

1.    Three Yard Line.  On command, the weapon will be quickly drawn from the holster in a safe manner and fired, double action, from the modified weaver stance.  (Eye level, strong foot to the rear in field interview position, strong hand supported by weak.)

a.    Load with six round and have six rounds available for reloading from the pocket, pouch, loops or speed loader.

b.    Upon the command of the Range Officer or at the turn of the target, quickly draw the weapon from the holster in a safe manner and fire two rounds to the center mass area of the target and holster the weapon.  The time limit is three seconds.

c.    Repeat stage b, above.

d.    Upon command of the Range Officer or at the turn of the target, draw and fire fifth and sixth round, unload, reload with six rounds and fire two rounds to the center mass area of the target.  At the conclusion of the firing, place the weapon in the holster.  The time limit is 20 seconds.

e.    Repeat stage b, above.

f.    Repeat stage b, above.

g.    Shooters unload and place the empty weapon in the holster.

2.    Seven Yard Line.  On command, or at the turn of the target, the weapon will be quickly drawn from the holster in a safe manner, and fired, doubled action with two hand hold, from the extended arm position, using the sights.

Judicial Protective Services
*(Revised July 7, 2000)*

## STAGE ONE

a.    Load with six rounds and have two rounds available for reloading from the pocket, pouch or loops.

b.    Upon command of the Range Officer or at the turn of the target, quickly and safely draw the weapon from the holster and fire two rounds to the center mass area of the target. Place the weapon in the holster. The time limit is five seconds.

c.    Repeat stage b, above.

d.    Upon command of the Range Officer or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire the fifth and sixth round, unload, reload with two rounds and fire two shots. Unload and place the empty weapon in the holster. The time limit is 20 seconds.

## STAGE TWO

a.    Load with six rounds and have twelve rounds available for reloading from the pocket and pouch.

b.    Upon command of the Range Officer or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire two rounds to the center mass and one shot to the head area of the target. Place the weapon in the holster. The time limit is six seconds.

c.    Upon command of the Range Officer or at the turn of the target, quickly draw the weapon from the holster in a safe manner, fire two rounds to the center mass and one shot to the head area of the target. Unload, reload with six rounds and fire two rounds to the center mass and one shot to the head area of the target. Place the weapon in the holster at the conclusion of this phase. The time limit is 25 seconds. (Note: When applicable, allow time to reload pouches.)

d.    Upon command of the Range Officer or at the turn of the target, draw, fire two rounds to the center mass and one shot to the head area of the target, unload, reload with six rounds from the pocket or pouch and fire two rounds to the center mass and one round to the head area of the target. Place the weapon in the holster at the conclusion of this phase. The time limit is 25 seconds.

Judicial Protective Services
*(Revised July 7, 2000)*

e.  Upon command of the Range Officer or at the turn of the target, draw, fire two rounds to the center mass and one shot to the head area of the target. The time limit is six seconds.

f.  Unload and place the empty weapon in the holster.  Once the line is secure, move down range and score the target.

1.  <u>Fifteen Yard Line</u>.  On command, the weapon will be quickly drawn in a safe manner, and fired, double action, from the point shoulder position, with a two-handed hold and using the sights.

a.  Load with six rounds and holster.  Have six rounds available for reloading from either a pouch or pocket.

b.  Upon command of the Range Officer or at the turn of the target, quickly draw the weapon from the holster in a safe manner and fire two rounds to the center mass area of the target and holster the weapon.  The time limit is six seconds.

c.  Repeat stage b, above.

d.  Upon command of the Range Officer or at the turn of the target, quickly draw the weapon from the holster in a safe manner and fire the fifth and sixth rounds, unload, reload with six rounds, fire two rounds to the center mass area of the target and holster the weapon.  The time limit is 25 seconds.

e.  Repeat stage b, above.

f.  Repeat stage b, above.  Unload and place the empty weapon in the holster. Once the line is secure, shooters will move down range and score the targets.

I.  <u>Recording Scores</u>.

1.  Once targets have been scored, scores should be verified and recorded on the Weapons/Qualification and Familiarization Record Form (USM 333) by the Range Officer or Firearms Instructor.

2.  A copy of the completed form should be forwarded to the Judicial Protective Services for inclusion in the Court Security Officer's official file.

Judicial Protective Services
*(Revised July 7, 2000)*



Section J - Attachment 2(C)

## FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE
### WASHINGTON, D.C. 20537

## APPLICANT

**1. LOOP**

CENTER OF LOOP

DELTA

THE LINES BETWEEN CENTER OF LOOP AND DELTA MUST SHOW

**2. WHORL**

DELTAS

THESE LINES RUNNING BETWEEN DELTAS MUST BE CLEAR

**3. ARCH**

ARCHES HAVE NO DELTAS

LEAVE THIS SPACE BLANK

TO OBTAIN CLASSIFIABLE FINGERPRINTS:

1. USE BLACK PRINTER'S INK.
2. DISTRIBUTE INK EVENLY ON INKING SLAB.
3. WASH AND DRY FINGERS THOROUGHLY.
4. ROLL FINGERS FROM NAIL TO NAIL, AND AVOID ALLOWING FINGERS TO SLIP.
5. BE SURE IMPRESSIONS ARE RECORDED IN CORRECT ORDER.
6. IF AN AMPUTATION OR DEFORMITY MAKES IT IMPOSSIBLE TO PRINT A FINGER, MAKE A NOTATION TO THAT EFFECT IN THE INDIVIDUAL FINGER BLOCK.
7. IF SOME PHYSICAL CONDITION MAKES IT IMPOSSIBLE TO OBTAIN PERFECT IMPRESSION, SUBMIT THE BEST CAN BE OBTAINED WITH A BRIEF STATED TO THE CARD EXPLAINING THE CIRCUMSTANCES.
8. EXAMINE THE COMPLETED PRINTS TO SEE IF THEY CAN BE CLASSIFIED, BEARING IN MIND THAT MOST FINGERPRINTS HAVE LOOP OR WHORL PATTERNS AS SHOWN ON THIS CARD.

THIS CARD FOR USE BY:

1. LAW ENFORCEMENT AGENCIES IN FINGERPRINTING APPLICANTS FOR LAW ENFORCEMENT POSITIONS.

2. OFFICIALS OF STATE AND LOCAL GOVERNMENTS FOR PURPOSES OF EMPLOYMENT, LICENSING AND PERMITS, AS AUTHORIZED BY STATE STATUTES AND APPROVED BY THE ATTORNEY GENERAL OF THE UNITED STATES. LOCAL AND COUNTY ORDINANCES UNLESS SPECIFICALLY BASED ON APPLICABLE STATE STATUTES DO NOT SATISFY THIS REQUIREMENT.

3. U.S. GOVERNMENT AGENCIES AND OTHER ENTITIES REQUIRED BY FEDERAL LAW.

4. OFFICIALS OF FEDERALLY CHARTERED OR INSURED BANKING INSTITUTIONS TO PROMOTE OR MAINTAIN THE SECURITY OF THOSE INSTITUTIONS.

INSTRUCTIONS:

1. PRINTS MUST FIRST BE CHECKED THROUGH THE APPROPRIATE STATE IDENTIFICATION BUREAU AND ONLY THOSE FINGERPRINTS FOR WHICH NO DISQUALIFYING RECORD HAS BEEN FOUND LOCALLY SHOULD BE SUBMITTED FOR FBI SEARCH.

2. PRIVACY ACT OF 1974 REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

3. IDENTITY OF PRINTS CONTRIBUTOR SHOULD BE SHOWN IN SPACE "EMPLOYER AND AGENCY." THE CONTRIBUTOR IS THE NAME OF THE AGENCY SUBMITTING THE FINGERPRINT CARD TO THE FBI.

4. FBI NUMBER IF KNOWN SHOULD ALWAYS BE FURNISHED IN THE APPROPRIATE SPACE.

MISCELLANEOUS NO. — RECORD OTHER ARMED FORCES NO. PASSPORT NO. (PP) ALIEN REGISTRATION NO. (AR) PORT SECURITY CARD NO. (PS) SELECTIVE SERVICE NO. (SS), VETERANS ADMINISTRATION CLAIM NO. (VA).

☆U.S.G.P.O. 1988   332-035/80003

Section J Attachment 2C

# STANDARDS OF PERFORMANCE CERTIFICATION

I, _____ (Name of
Certifier), hereby certify that I have read, understand, and
received a copy of the U.S. Marshals Service's Court Security
Officer's Standards of Performance.  I also understand that any
violations of the above rules and regulations could result in an
indefinite suspension from performing as a Court Security Officer
under the U.S. Marshals Service's Court Security Contract.


_____
CSO Signature

_____
Witness' Signature
(COTR or his/her designee)


_____
Date

_____
Date


Section J - Attachment 2(D)

# COURT SECURITY OFFICER
## TRANSFER/RESIGNATION/TERMINATION SHEET

This form should be completed and forwarded to the Chief, CSO Program, with any required paperwork, whenever a CSO resigns or is terminated by the Contractor or Contracting Officer for any reason.

DISTRICT: _____     DATE SUBMITTED: _____

FACILITY ADDRESS: _____
_____

### INFORMATION ON CSO

NAME OF CSO: _____

SSN: _____

DATE OF TRANSFER/RESIGNATION/TERMINATION: _____

WORK SITE ADDRESS: _____
_____

REASON FOR LEAVING: _____
_____
_____
_____
_____

REMARKS: _____

CSO FORM 009
(March 1997)

Section J - Attachment 2(E)

U.S. Department of Justice
United States Marshals Service



# Certificate of Medical Examination for Court Security Officers

Return within two weeks of examination date to:

U.S. Marshals Service
Judicial Facility Security Program
600 Army Navy Drive – CS-3, Suite 600
Arlington, VA 22202-4210

Please be sure that both sides of each page are complete. **After signing, return entire form along with lab, EKG, and other screening forms.**

**Purpose of Examination:**
☐ Periodic Medical Exam–CSO
☐ Applicant Exam–CSO

Name: _____

District: _____

Section J - Attachment 2(F)

## PART I—COURT SECURITY OFFICER IDENTIFICATION

| NAME (Last, first, middle) (Type or print) | SOCIAL SECURITY NO. | SEX<br>☐ Male<br>☐ Female | DATE OF BIRTH |
|---|---|---|---|
| DISTRICT ADDRESS | AREA CODE & TELEPHONE<br>(   ) | | DATE OF EXAMINATION |
| HOME ADDRESS (No. street or RFD, city or town, State, and ZIP CODE) | | | |

NUMBER OF YEARS SERVING AS A COURT SECURITY OFFICER _____

## PART II—PHYSICAL REQUIREMENTS OF CSO

### BRIEF DESCRIPTION OF WHAT POSITION REQUIRES EMPLOYEE TO DO–

Court Security Officers (CSOs) provide security for all U.S. Court Facilities. CSOs must be capable of providing both a deterrence to potential threats and a timely and appropriate response to actual threats. The primary functions of CSOs include physical security for federal courthouses and their perimeters, checkpoint security for courthouses and courtroom entry points, courtroom monitoring, and rapid responses to emergencies and alarms within courthouses. In addition, aggressive law enforcement functions such as making arrests are required, necessitating the restraint of non-cooperative persons. CSOs are required to have good vision and hearing and be capable of sitting, walking, and running. The work requires frequent and prolonged walking, standing, running, sitting, and stooping. CSOs' general physical condition must in no way involve any defect which might become a hazard to themselves or others. The physical well being of the CSOs will assure their ability to tolerate the stress associated with this type of employment and increase physical readiness in cases of emergency. CSOs must be able to perform efficiently and safely the full range of duties of the position described above.

### FUNCTIONAL REQUIREMENTS

Range of motion: upper and lower extremities bilaterally
  Heavy lifting, 45 pounds and over
  Heavy carrying, 45 pounds and over
  Reaching
  Grasping
  Climbing stairs
  Running
Operating a motor vehicle
Ability for rapid mental and muscular coordination
  simultaneously
Ability to use and desirability of using firearms
Specific visual requirements
  Binocular vision
  Depth perception
  Ability to distinguish basic colors

### ENVIRONMENTAL FACTORS

Outside and inside
Excessive heat
Excessive cold
Excessive humidity
Excessive dampness or chilling
Dry atmospheric conditions
Working around moving objects or vehicles
Slippery or uneven walking surfaces
Unusual fatigue factors
Working closely with others
Working alone
Protracted or irregular hours of work

Form USM-229

NAME: *(Last, First, Middle)* _____   DATE OF BIRTH ____/____/____

*PRINT IN INK OR TYPEWRITE:*

## PART IV–REPORT OF MEDICAL HISTORY (To be completed by Contract Employee)

•- STATEMENT OF MEDCIATIONS CURRENTLY USED *(Indicate N/A if none)*:

| Name of Medication | Dosage | Taken Since |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

• DO YOU HAVE ANY MEDICAL DISORDER OR PHYSICAL IMPAIRMENT WHICH WOULD INTERFERE IN ANY WAY WITH THE FULL PERFORMANCE OF THE DUTIES SHOWN IN PART II?   ❑ YES   ❑ NO
*If your answer is "YES, explain:* _____
_____

• HAVE YOU EVER *(Please check at left of each item)*

| YES | NO | |
|---|---|---|
| ❑ | ❑ | Lived with anyone who had tuberculosis |
| ❑ | ❑ | Coughed up blood |
| ❑ | ❑ | Bled excessively after injury or tooth extraction |
| ❑ | ❑ | Attempted suicide |
| ❑ | ❑ | Been a sleepwalker |
| ❑ | ❑ | Had eye surgery (RK, PRK, LASIK or other) |

• DO YOU *(Please check at left of each item)*

| YES | NO | |
|---|---|---|
| ❑ | ❑ | Wear glasses or contact lenses |
| ❑ | ❑ | Have vision in only one eye |
| ❑ | ❑ | Wear a hearing aid |
| ❑ | ❑ | Stutter or stammer habitually |
| ❑ | ❑ | Wear a brace or back support |
| ❑ | ❑ | Have a family history of heart attacks before the age of 55? |

Who: _____
Problem: _____
Age at Onset or Death: _____

• ARE YOU *(Check one)*   ❑ Right handed   ❑ Left handed

• HAVE YOU EVER HAD OR HAVE YOU NOW *(Please check each item)*

| YES CURRENT | YES PAST | NO | | YES CURRENT | YES PAST | NO | |
|---|---|---|---|---|---|---|---|
| ❑ | ❑ | ❑ | Scarlet fever | ❑ | ❑ | ❑ | Gall bladder trouble or gallstones |
| ❑ | ❑ | ❑ | Rheumatic fever | ❑ | ❑ | ❑ | Jaundice or hepatitis |
| ❑ | ❑ | ❑ | Swollen or painful joints | ❑ | ❑ | ❑ | Adverse reaction to serum, drug, or medicine |
| ❑ | ❑ | ❑ | Frequent or severe headache | ❑ | ❑ | ❑ | Broken bones |
| ❑ | ❑ | ❑ | Dizziness or fainting spells | ❑ | ❑ | ❑ | Tumor, growth, cyst, cancer |
| ❑ | ❑ | ❑ | Eye trouble | ❑ | ❑ | ❑ | Rupture/hernia |
| ❑ | ❑ | ❑ | Ear, nose, or throat trouble | ❑ | ❑ | ❑ | Hemorrhoids |
| ❑ | ❑ | ❑ | Hearing loss | ❑ | ❑ | ❑ | Frequent or painful urination |
| ❑ | ❑ | ❑ | Chronic or frequent colds | ❑ | ❑ | ❑ | Diabetes |
| ❑ | ❑ | ❑ | Severe tooth or gum trouble | ❑ | ❑ | ❑ | Abnormal resting ECG |
| ❑ | ❑ | ❑ | Sinusitis | ❑ | ❑ | ❑ | Abnormal stress ECG |
| ❑ | ❑ | ❑ | Hay fever | ❑ | ❑ | ❑ | Bed wetting since age 12 |
| ❑ | ❑ | ❑ | Head injury | ❑ | ❑ | ❑ | Kidney stone or blood in urine |
| ❑ | ❑ | ❑ | Skin diseases | ❑ | ❑ | ❑ | Sugar or albumin in urine |
| ❑ | ❑ | ❑ | Thyroid trouble | ❑ | ❑ | ❑ | Recent gain or loss of weight |
| ❑ | ❑ | ❑ | Tuberculosis | ❑ | ❑ | ❑ | Arthritis, rheumatism, or bursitis |
| ❑ | ❑ | ❑ | Asthma | ❑ | ❑ | ❑ | Bone, joint or other deformity |
| ❑ | ❑ | ❑ | Shortness of breath or emphysema | ❑ | ❑ | ❑ | Loss of finger or toe |
| ❑ | ❑ | ❑ | Pain or pressure in chest | ❑ | ❑ | ❑ | Recurrent back pain |
| ❑ | ❑ | ❑ | Chronic cough or bronchitis | ❑ | ❑ | ❑ | Painful or "trick" shoulder or elbow |
| ❑ | ❑ | ❑ | Palpitation or pounding heart | ❑ | ❑ | ❑ | "Trick" or locked knee |
| ❑ | ❑ | ❑ | Heart trouble | ❑ | ❑ | ❑ | Foot trouble |
| ❑ | ❑ | ❑ | High or low blood pressure | ❑ | ❑ | ❑ | Neuritis |
| ❑ | ❑ | ❑ | Disease of arteries | ❑ | ❑ | ❑ | Paralysis (include infantile) |
| ❑ | ❑ | ❑ | Disease of heart | ❑ | ❑ | ❑ | Epilepsy or seizures |
| ❑ | ❑ | ❑ | Stroke | ❑ | ❑ | ❑ | Car, train, sea or air sickness |
| ❑ | ❑ | ❑ | Anemia | ❑ | ❑ | ❑ | Frequent trouble sleeping |
| ❑ | ❑ | ❑ | Abnormal chest x-ray | ❑ | ❑ | ❑ | Depression or excessive worry |
| ❑ | ❑ | ❑ | Orthopedic or muscular problems | ❑ | ❑ | ❑ | Loss of memory or amnesia |
| ❑ | ❑ | ❑ | Increased cholesterol level | ❑ | ❑ | ❑ | Nervous trouble of any sort |
| ❑ | ❑ | ❑ | Cramps in your legs | ❑ | ❑ | ❑ | Periods of unconsciousness |
| ❑ | ❑ | ❑ | Frequent indigestion | ❑ | ❑ | ❑ | Stomach, liver, or intestinal trouble |

Form USM-229

**PART VI—MEDICAL EXAMINATION DATA (To be completed by Examining Physician)**

**Note to Examining Physician:** As you make your examination and report your findings and conclusions, please consider the job description, function requirements, environmental factors, and medical standards for the Contract Court Security Officer position. List any abnormalities under each examination.

**MEASUREMENTS:**

A. Height: _____ Feet _____ Inches       B. Weight: _____ Pounds

**EXAM RESULTS:**

A. Distant vision (Snellen)
     1. Without glasses or contacts:     Right: 20 / \_\_\_\_\_   Left: 20 / \_\_\_\_\_   Both: 20 / \_\_\_\_\_
     2. With glasses or contacts, if worn:   Right: 20 / \_\_\_\_\_   Left: 20 / \_\_\_\_\_   Both: 20 / \_\_\_\_\_

B. Near Vision:
     1. Without glasses or contacts:     Right: 20 / \_\_\_\_\_   Left: 20 / \_\_\_\_\_   Both: 20 / \_\_\_\_\_
     2. With glasses or contacts, if worn:   Right: 20 / \_\_\_\_\_   Left: 20 / \_\_\_\_\_   Both: 20 / \_\_\_\_\_

     Testing was done   *with / without*   correction *(circle one)*.

C. Color Vision: Testing must be performed using Ishihara (or comparable) Pseudo-Isochromatic Plates. A minimum of 14 plates must be reported: \_\_\_\_\_ plates correct of \_\_\_\_\_ total plates.

D. Depth Perception: Results must be recorded in seconds of arc.
     Type of test: _____   Score: _____   Seconds of arc: _____

**HEARING**

Using an audiometer for measurement, hearing must be demonstrated in each ear at 500, 1000, 2000, 3000, and 4000 Hz in a sound controlled booth. Results must show the lowest sound intensity, numerically in decibels, at which the tone can be heard, in each ear, at each frequency.

**EXAM RESULTS:**
No hearing aids are to be used for screening.

|   | 500 | 1000 | 2000 | 3000 | 4000 |
|---|------|------|------|------|------|
| L |      |      |      |      |      |
| R |      |      |      |      |      |

Form USM-229
(Est. 01/011

## 4. GENITOURINARY SYSTEM DISORDERS

Any functional disorder rendering the person incapable of sustained attention to work tasks, i.e. urinary frequency and secondary discomfort, is disqualifying.

EXAM RESULTS: *(Enter findings. DO NOT leave blank.)*

_____

## 5. HERNIAS

Inguinal and femoral hernias, with or without the use of a truss, are disqualifying.  Other hernias are disqualifying if they interfere with the performance of the duties of the position.

EXAM RESULTS:  *(Enter findings. DO NOT leave blank.)*

_____

## 6. NERVOUS SYSTEM

Dysfunction of the central and peripheral nervous system which significantly increases the probability of accidents and/or potential inability to perform a variety of physical tasks is disqualifying.

EXAM RESULTS, including cranial nerves, gait, and reflexes:  *(Enter findings. DO NOT leave blank.)*

_____

## 7. ENDOCRINE SYSTEM

Any functional disorder rendering the person incapable of sustained attention to work tasks is disqualifying.

EXAM RESULTS: *(Enter findings. DO NOT leave blank.)*

_____

Thyroid Exam: _____

Form USM-229

NAME: *(Last, First, Middle)* _____  DATE OF BIRTH ____/____/____

## PART VII—EXAMINATION SUMMARY. Note to Examining Physician:

Summarize below any medical findings which need further medical attention or that would limit the examinee's performance of law enforcement duties or present a hazard to the examinee or others.

### FUNCTIONAL REQUIREMENTS

| Limitations | No Limitations | |
|---|---|---|
| ❏ | ❏ | Heavy lifting, 45 lbs. and over |
| ❏ | ❏ | Heavy carrying, 45 lbs. and over |
| ❏ | ❏ | Reaching above the shoulder |
| ❏ | ❏ | Use of fingers |
| ❏ | ❏ | Use of both hands |
| ❏ | ❏ | Use of both legs |
| ❏ | ❏ | Climbing, use of legs and arms |
| ❏ | ❏ | Operation of crane, truck, tractor, motor vehicle |
| ❏ | ❏ | Ability for rapid mental and muscular coordination simultaneously |
| ❏ | ❏ | Ability to use and desirability of using firearms |
| ❏ | ❏ | Ability to stand for unusually prolonged periods of time |
| ❏ | ❏ | Ability to sit for unusually prolonged periods of time |
| ❏ | ❏ | Ability to function normally with irregularly scheduled intake of food |

### ENVIRONMENTAL REQUIREMENTS

| Limitations | No Limitations | |
|---|---|---|
| ❏ | ❏ | Outdoor environment |
| ❏ | ❏ | Indoor environment |
| ❏ | ❏ | Excessive heat |
| ❏ | ❏ | Excessive cold |
| ❏ | ❏ | Excessive humidity |
| ❏ | ❏ | Excessive dampness or chilling |
| ❏ | ❏ | Dry atmospheric conditions |
| ❏ | ❏ | Working around moving objects or vehicles |
| ❏ | ❏ | Slippery or uneven walking surfaces |
| ❏ | ❏ | Unusual fatigue factors |
| ❏ | ❏ | Working closely with others |
| ❏ | ❏ | Working alone |
| ❏ | ❏ | Prolonged or irregular hours of work |
| ❏ | ❏ | AGGRESSIVE LAW ENFORCEMENT ACTIVITIES |

**SIGNIFICANT FINDINGS:**

EXAMINING PHYSICIAN'S NAME *(Type or print)*      SIGNATURE OF EXAMINING PHYSICIAN

ADDRESS *(including ZIP Code)*

IMPORTANT: After signing, return entire form along with lab, EKG, and other screening forms.

11. **DYSRHYTHMIAS** such as Ventricular Tachycardia or Fibrillation, Wolff-Parkinson- White Syndrome, Paroxysmal Atrial Tachycardia with or without block, Atrial Flutter or Fibrillation.

12. **ELECTROCARDIOGRAM FINDINGS** when requested, such as:

    1. Left Bundle Branch Block

    2. Newly acquired Right Bundle Branch Block

    3. ST segment alterations

    4. Atrioventricular dissociation

    5. First Degree A-V Block with PR interval >= 0.3 seconds

    6. Second and Third Degree A-V Elock

    7. Atrial fibrillation or Flutter

    8. Bradycardia with heart rate of less than 40 or sinus pauses of 3.0 seconds or longer

13. **HYPERTENSION** that exceeds a systolic blood pressure of 150 and/or diastolic blood pressure of 90 mm Hg with or without medication.

14. **MARFAN'S SYNDROME**

15. **MYOCARDITIS/ENDOCARDISTIC/PERICARDITIS**

16. **OCCLUSIVE PERIPHERAL ARTERIAL DISEASE** such as Raynaud's

17. **PACEMAKERS or PROSTHETIC VALVES** are generally disqualifying. Any other condition or post-surgical management that requires the use of Coumadin or other anti-coagulants is generally disqualifying.

18. **PULMONARY EMBOLISM**

19. **SYNCOPE,** history of (Cadiogenic or vasovagal). This history will require cardiology evaluation and/or tilt table testing for final determination.

20. **VALVULAR HEART DISEASE** such as mitral valve stenosis or regurgitation, aortic stenosis or regurgitation

---

**EXAM RESULTS: (Enter findings. DO NOT leave blank)**
    A. Heart Auscultation:_____
    B. Blood Pressure:_____
    C. Resting Pulse: _____
    D. Peripheral Pulses:_____

---

Form USM-229
(Est. 01/01)

NAME: *(Last, First, Middle)*                                                    DATE OF BIRTH ____/____/____

## 3.   GASTROINTESTINAL SYSTEM REQUIREMENT

- The applicant/incumbent must have a gastrointestinal tract that is sufficient for the individual to safely and efficiently carry out the requirements of the job.

- There should be no evidence by physical examination (including laboratory testing) and medical history of gastrointestinal conditions likely to present a safety risk or to worsen as a result of carrying out the essential functions of the job.

- All new and existing gastrointestinal conditions will be reviewed on a case-by-case basis.

- All medication taken for gastrointestinal conditions will be carefully reviewed to ensure that they do not compromise job performance and therefore interfere with safe and efficient job performance.

- Any condition that is recurrent with significant diarrhea and/or pain, that may limit activity, requires pain medication, or that causes anemia, weakness or significant weight loss may be disqualifying.

**CONDITIONS WHICH MAY RESULT IN DISQUALIFICATION INCLUDE, BUT ARE NOT LIMITED TO, THE FOLLOWING EXAMPLES:**

1. **ANAL FISSURES**
2. **CHOLECYSTITIS, CHOLELITHIASIS, or GALLBLADDER DISEASE**
3. **CIRRHIOSIS OF THE LIVER**
4. **COLOSTOMIES**
5. **IRRITABLE BOWEL SYNDROME**
6. **DIVERTICULITIS**
7. **DYSPHAGIA**
8. **HEPATITIS**, acute or chronic
9. **HERNIA, UNTREATED INGUINAL, INCISIONAL, or VENTRAL**
10. **INTESTINAL OBSTRUCTION**
11. **PANCREATITIS**

ABDOMINAL EXAM RESULTS: (Enter findings. DO NOT leave blank)

Form USM-229

NAME: *(Last, First, Middle)* _____ ● _____ ● DATE OF BIRTH _____/_____/_____

## 5.   HERNIAS

Inguinal and femoral hernias, with or without the use of a truss, are disqualifying.  Other hernias are disqualifying if they interfere with performance of duties of the position.

EXAM RESULTS: (Enter findings. DO NOT leave blank)

## 6.  NERVOUS SYSTEM

The applicant/incumbent must have a nervous system that is free of central and or peripheral nervous system interference that will allow the individual to safely and efficiently carry out the requirements of the job. This may be demonstrated by:

1. A physical exam of the cranial and peripheral nerves and the vestibular and cerebellar system that is within the range of normal variation, including intract cranial nerves I-XII
2. Normal vibratory sense in the hands and feet,
3. Normal proprioception (sense of movement and position of the body) of the major joints;
4. Normal sensation of hot and cold in the hands and feet,
5. Normal reflexes of the upper and lower extremities;
6. Normal balance (e.g., heel-toe walk, Romberg, balance on one foot).
7. Normal basis mental status evaluation (e.g., person, place, time, current, events);
8. No evidence by physical examination and medial history of nervous, cerebellar or vestibular system conditions likely to present a safety risk or to worsen as a result of carrying out the essential functions of the job;
9. Any condition with loss of motor skills, muscle strength, cognitive function, coordination, or gait, sensory loss (limb, hearing, or vision); tremor; pain, or effect on speech may result in further evaluation of disqualification.
10. All neurological conditions will b reviewed on a case-by-case basis.

CONDITIONS WHICH MAY RESULT IN DISQUALIFICATIONS INCLUDE, BUT ARE NOT LIMITED TO, THE FOLLOWING EXAMPLES:

1. **ALZHEIMER'S** or other degenerative dementia disorders
2. **AMYOTROPHIC LATERAL SCLEROSIS**
3. **CEREBRAL PALSY**
4. **CRANIAL NEUROPATHIES** such as Tic Doulourex, Trigeminal Neuralgia

--Cont'd.

Form USM-229

NAME: *(Last, First, Middle)* ⬤_____⬤ DATE OF BIRTH ____/____/____

## 7. SPEECH

Disease or conditions resulting in indistinct speech patterns are disqualifying.

## 8. EXTREMITIES & SPINE

The applicant/incumbent must have a musculoskeletal system that allows the individual sufficient movement, agility, flexibility, strength, dexterity, coordination, acceleration, deceleration and the ability to change directions in order to safely and efficiently carry out the requirements of the job. This may be demonstrated by:

- A physical exam of the upper and lower extremities, neck, and back that is within the range of normal variation for strength, flexibility, range of motion, and joint stability;
- No evidence of physical examination and medical history of musculoskeletal conditions likely to present a safely risk or to worsen as a result of carrying out the essential functions of the job.
- All musculoskeletal conditions will be reviewed on a case-by-case basis.

**CONDITIONS WHICH MAY RESULT IN DISQUALIFICATION INCLUDE, BUT ARE NOT LIMITED TO, THE FOLLOWING EXAMPLES:**

1. **AMPUTATION of an EXTREMITY.** Any loss of an upper or lower extremity, hand, foot.

2. **AMPUTATION of THUMB or INDEX FINGER** that affects the ability to perform essential functions, such as involving lethal and non-lethal weapons, handcuffs, etc.

3. **ARTHRITIS** of any type if there is limited joint motion, pain, and/or muscle atrophy that affects the ability to perform essential job functions.

4. **CERVICAL, THORACIC, LUMBAR, LUMOSCRAL DISK DISEASE, FRACTURES, OR DISLOCATION** of any type if there is limited joint or gait motion, pain, motor or sensory.

5. **CHRONIC LOW BACK PAIN** with recurrence of pain and/or restricted range of motion or gait that affects the ability to perform essential functions. Each case will be reviewed in context to the original history of the injury (or whatever the etiology), the response to therapeutic regimes, frequency of recurrence, exacerbating factors, and lengths of disability associated with the recurrences combined with the current clinical presentations.

6. **CHRONIC SPRAIN OR STRAIN OF THE NECK** limiting mobility or causing recurring cephalgia (headaches) may be disqualifying.

(Cont'd)

NAME: *(Last, First, Middle)* ● _____ ● DATE OF BIRTH ___/___/___

## 9. MISCELLANEOUS

### A. VISION STANDARD

The applicant/incumbent must be able to see well enough to safely and efficiently carry out the requirements of the job.

**HISTORY:** All applicants/incumbents should be questioned regarding a history of eye injury, retinal detachment, serious eye disease (specific questions for glaucoma, diabetic or hypertensive retinopathy, and retinitis pigmentosa), or visual field defect. Copies of previous assessments for the above abnormalities shall be obtained whenever possible. The individual should also be questioned regarding the use of orthokeratology lenses. Orthokeratology lenses should not be worn for two weeks prior to the examination.

1. CORRECTED DISTANT VISUAL ACUITY must be 20/30 or better, as measured with both eyes viewing (binocular).

2. CORRECTED DISTANT VISUAL ACUITY must be 20/125 or better in the worst eye.

3. COMPLETE LOSS OF VISION IN ONE EYE is disqualifying.

4. ABNORMAL COLOR VISION with severe color deficiency in any color is generally disqualifying. The use of X-Chrom contact lenses or tinted spectacle lenses/contact lenses are not permitted in the testing of color vision. Basic color vision (the ability to distinguish yellow, green, red and blue)) is required. This may be demonstrated by passing the standard Farnsworth D-15 color vision test.

5. VISUAL FIELDS should be normal with full peripheral vision. In full, normal binocular vision (full, normal peripheral vision) the horizontal field is about 180 degrees and the vertical field is 120-130 degrees. Any permanent and significant deviation from full visual fields, either to the central or peripheral visual field, is generally disqualifying. Any history of eye disease or any medical condition likely to cause eye disease, such as retinopathy, glaucoma, retinitis pigmentosa, or retinal detachment will require visual field evaluation by optometrist or ophthalmologist.

OPHTHALMOLOGIC CONDITIONS WHICH MAY RESULT IS DISQUALIFICATION INCLUDE, BUT ARE NOT LIMITED TO THE FOLLOWING EXAMPLES:

OPHTHALMOLOGIC conditions which are particularly susceptible to environment exposures such as sunlight, dust, fumes, or various volatile compounds may cause an applicant to be disqualified. An eye condition likely to impact on color vision will require further assessment of color vision.

1. CONJUNCTIVITIS, chronic

2. CORNEAL ABRASIONS

3. CORNEAL DYSTROPHY

4. CORNEAL SCARS

5. CORNEAL ULCERS

*--Cont'd.*

Form USM-229

NAME: *(Last, First, Middle)* _____ DATE OF BIRTH _____/_____/_____

- Binaural hearing (hearing in both ears) is required. Complete loss of hearing in one ear is disqualifying.

- Functional hearing test, including speech recognition and the HINT, will be used to determine the medical qualification of all individuals who fail the pure tone audiometric screening.

- All audiological conditions will be reviewed on a case-by-case basis.

## OTOLOGICAL CONDITIONS WHICH MAY RESULT IN DISQUALIFICATION INCLUDE, BUT ARE NOT LIMITED TO, THE FOLLOWING EXAMPLES:

1. HEARING AIDS

2. ACOUSTIC NEUROMA

3. MENIERE'S DISEASE

4. OTOSCELROSIS

5. VESTIBULAR NEURONITIS

6. VERTIGO or PAROXYSMAL POSITIONAL VERTIGO

## C. HEAD, NOSE, MOUTH, THROAT AND NECK STANDARD (including teeth and oral hygiene):

The applicant/incumbent must have structures and functions of the head, nose, mouth, throat and neck that are sufficient for the individual to safely and efficiently carry out the requirement of the job. This may be demonstrated by:

- A physical exam of the head, nose, mouth, throat and neck that is within the range of normal variation, including normal flexion, extension and rotation of the neck;
- Open nasal and oral airways
- Unobstructed Eustachian tubes,
- No structural abnormalities that would prevent the normal use of protective eyewear.
- Normal conversational speech;
- No evidence of pre-existing or newly diagnosed medical condition of the head, nose, mouth, throat, or neck that could significantly interfere with the individual's ability to successfully perform essential law enforcement functions, such as speech or breathing, or that has the potential to render the person suddenly incapacitated.
- All head, nose, mouth, throat, and neck conditions will be reviewed on a case-by-case basis.

# ENTRY ON DUTY
# TRANSMITTAL SHEET

**NAME:** _____

**SSN:** _____

**DISTRICT:** _____

**LOCATION:** _____

**START DATE:** _____

**CSO SIGNATURE:** _____ **DATE:** _____

Section J - Attachment 2(G)

paper work, for each new and replacement CSO applicant. If information is unknown, state UNKNOWN. DO NOT LEAVE BLANK SPACES.

DATE SUBMITTED: _____

DISTRICT/CITY: _____

FACILITY ADDRESS: _____
_____

## INFORMATION ON CSO LEAVING THE PROGRAM

CSO LEAVING: _____ SSN: _____

(Last, First, Middle)

F/T OR SHARED: _____ START DATE: _____ END DATE: _____

LOCATION OF POSITION: _____

(ADDRESS)

## INFORMATION OF CSO BEING REASSIGNED

(If applicable)

CSO BEING REASSIGNED: _____

(Last, First, Middle)

SSN: _____ REPLACING: _____

(Last, First, Middle)

POSITION CHANGE: From: _____ To: _____ START DATE: _____

(Full-Time or Shared)

## INFORMATION ON CSO APPLICANT

NAME OF APPLICANT: _____

SSN: _____ F/T OR SHARED: _____

LOCATION OF POSITION: _____

(Address)

## (TO BE COMPLETED BY COURT SECURITY PROGRAM)

_____ REPLACEMENT/START-UP COST IS GOVERNMENT'S RESPONSIBILITY.

_____ REPLACEMENT/START-UP COST IS CONTRACTOR'S RESPONSIBILITY.

REPLACEMENT/START-UP IS RESULT OF/TO BE BILLED IAW:

18-MONTH RULE _____

RESULT OF BACKGROUND FINDINGS _____

ILLNESS OR OTHER CONDITION (explain on back) _____
(Attach appropriate forms, letters, etc.)

DEATH _____

REMARKS  (Place on Back of Form)

CSO FORM 010 (Revised 4/28/97)                    Section J - Attachment 2(I)

# CONTRACTOR PRELIMINARY BACKGROUND CHECK

NAME: _____

SSN: _____ DATE OF BIRTH: _____

ADDRESS: _____

_____

EMPLOYMENT:   *(Previous 5 years – If more than one employer, please attach separate sheet)*

Employer: _____

Employer Address: _____

Dates of Employment: _____

Person Verifying Employment: _____

Reason for leaving: _____

Would they rehire this person (if no, why not?): _____

_____

_____

Additional Comments: _____

_____

_____

_____

_____

_____

_____

_____

Section J - Attachment 2(J)

ACQUAINTANCES: *(Please provide (3) three)*

1.  Name: _____

    Address: _____

    _____

    Telephone Number(s): _____

    Comments: _____

    _____

    _____

    _____

2.  Name: _____

    Address: _____

    _____

    Telephone Number: _____

    Comments: _____

    _____

    _____

    _____

3.  Name: _____

    Address: _____

    _____

    Telephone Number: _____

    Comments: _____

    _____

    _____

    _____

NEIGHBORS:   *Going back 5 years, please provide the name, address, telephone number, and comments of one neighbor for each place of residence. If more than 3, please attach separate sheet.*

1.  Name: _____

    Address: _____

    _____

    Telephone Number(s): _____

    Comments: _____

    _____

    _____

    _____

2.  Name: _____

    Address: _____

    _____

    Telephone Number: _____

    Comments: _____

    _____

    _____

    _____

3.  Name: _____

    Address: _____

    _____

    Telephone Number: _____

    Comments: _____

    _____

    _____

    _____

Section J Attachment 2J

- 4 -

# CERTIFICATION OF FIREARM POSSESSION IN REGARDS TO DOMESTIC VIOLENCE

I, _____, (Name of CSO Applicant), an applicant for the position of Court Security Officer for the _____ District of _____, hereby certify that I am in compliance with Title 18, Section 922(g)(9) of the United States Code.


_____          _____
          CSO Applicant                              Contractor


_____          _____
             Date                                   Date


Section J Attachment 2J

# IN-DISTRICT TRAINING PROGRAM CERTIFICATION

I, _____ (Name of
Certifier), hereby certify that I have completed the In-District
Training Program at the United States Marshal's Office, District
of _____, on _____ (Date).


_____          _____
      CSO Signature                        Witness' Signature
                                      (COTR or his/her designee)


_____          _____
         Date                                  Date


**Section J - Attachment 2(K)**

# SUBCONTRACTING REPORT FOR INDIVIDUAL CONTRACTS
### (See instructions on reverse)

| OMB No.: 9000-0006 |
| Expires : 04/30/2001 |

Public reporting burden for this collection of information is estimated to average 8 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.   Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| 1. CORPORATION, COMPANY OR SUBDIVISION COVERED | 3. DATE SUBMITTED |
|---|---|
| a. COMPANY NAME | |
| b. STREET ADDRESS | |
| c. CITY    d. STATE  e. ZIP CODE | 4. REPORTING PERIOD FROM INCEPTION OF CONTRACT THRU: ☐ MAR 31  ☐ SEPT 30   YEAR |
| 2. CONTRACTOR IDENTIFICATION NUMBER | 5. TYPE OF REPORT ☐ REGULAR ☐ FINAL ☐ REVISED |

**6. ADMINISTERING ACTIVITY (Please check applicable box)**

☐ ARMY   ☐ GSA   ☐ NASA
☐ NAVY   ☐ DOE   ☐ OTHER FEDERAL AGENCY (Specify)
☐ AIR FORCE   ☐ DEFENSE LOGISTICS AGENCY

| 7. REPORT SUBMITTED AS (Check one and provide appropriate number) | | 8. AGENCY OR CONTRACTOR AWARDING CONTRACT |
|---|---|---|
| ☐ PRIME CONTRACTOR | PRIME CONTRACT NUMBER | a. AGENCY'S OR CONTRACTOR'S NAME |
| ☐ SUBCONTRACTOR | SUBCONTRACT NUMBER | b. STREET ADDRESS |
| 9. DOLLARS AND PERCENTAGES IN THE FOLLOWING BLOCKS: ☐ DO INCLUDE INDIRECT COSTS   ☐ DO NOT INCLUDE INDIRECT COSTS | | c. CITY    d. STATE  e. ZIP CODE |

## SUBCONTRACT AWARDS

| TYPE | CURRENT GOAL | | ACTUAL CUMULATIVE | |
|---|---|---|---|---|
| | WHOLE DOLLARS | PERCENT | WHOLE DOLLARS | PERCENT |
| 10a. SMALL BUSINESS CONCERNS (Include SDB, WOSB, HBCU/MI, HUBZone SB) (Dollar Amount and Percent of 10c.) | | | | |
| 10b. LARGE BUSINESS CONCERNS (Dollar Amount and Percent of 10c.) | | | | |
| 10c. TOTAL (Sum of 10a and 10b.) | | 100.0% | | 100.0% |
| 11. SMALL DISADVANTAGED (SDB) CONCERNS (Include HBCU/MI) (Dollar Amount and Percent of 10c.) | | | | |
| 12. WOMEN-OWNED SMALL BUSINESS (WOSB) CONCERNS (Dollar Amount and Percent of 10c.) | | | | |
| 13. HISTORICALLY BLACK COLLEGES AND UNIVERSITIES (HBCU) AND MINORITY INSTITUTIONS (MI) (If applicable) (Dollar Amount and Percent of 10c.) | | | | |
| 14. HUBZONE SMALL BUSINESS (HUBZone SB) CONCERNS (Dollar Amount and Percent of 10c.) | | | | |

**15. REMARKS**   List the number of actions for the following:

10a. _____
11. _____
12. _____
13. _____
14. _____

| 16a. NAME OF INDIVIDUAL ADMINISTERING SUBCONTRACTING PLAN | 16b. TELEPHONE NUMBER | |
|---|---|---|
| | AREA CODE | NUMBER |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is not usable

STANDARD FORM 294 (REV. 12-98)
Prescribed by GSA-FAR (48 CFR) 53.219(a)

## Section J - Attachment 3(A)

1. This report is not required from small businesses.

2. This report is not required for commercial items for which a commercial plan has been approved, nor from large businesses in the Department of Defense (DOD) Test Program for Negotiation of Comprehensive Subcontracting Plans. The Summary Subcontract Report (SF 295) is required for contractors operating under one of these two conditions and should be submitted to the Government in accordance with the instructions on that form.

3. This form collects subcontract award data from prime contractors/subcontractors that: (a) hold one or more contracts over $500,000 (over $1,000,000 for construction of a public facility); and (b) are required to report subcontracts awarded to Small Business (SB), Small Disadvantaged Business (SDB), Women-Owned Small Business (WOSB), and HUBZone Small Business (HUBZone SB) concerns under a subcontracting plan. For the Department of Defense (DOD), the National Aeronautics and Space Administration (NASA), and the Coast Guard, this form also collects subcontract award data for Historically Black Colleges and Universities (HBCUs) and Minority Institutions (MIs).

4. This report is required for each contract containing a subcontracting plan and must be submitted to the administrative contracting officer (ACO) or contracting officer if no ACO is assigned, semi-annually during contract performance for the periods ended March 31st and September 30th. A separate report is required for each contract at contract completion. Reports are due 30 days after the close of each reporting period unless otherwise directed by the contracting officer. Reports are required when due, regardless of whether there has been any subcontracting activity since the inception of the contract or since the previous report.

5. Only subcontracts involving performance within the U.S., its possessions, Puerto Rico, and the Trust Territory of the Pacific Islands should be included in this report.

6. Purchases from a corporation, company, or subdivision that is an affiliate of the prime/subcontractor are not included in this report.

7. Subcontract award data reported on this form by contractors/subcontractors shall be limited to awards made to their immediate subcontractors. Credit cannot be taken for awards made to lower tier subcontractors.

SPECIFIC INSTRUCTIONS

BLOCK 2: For the Contractor Identification Number, enter the nine-digit Data Universal Numbering System (DUNS) number that identifies the specific contractor establishment. If there is no DUNS number available that identifies the exact name and address entered in Block 1, contact Dun and Bradstreet Information Services at 1-800-333-0505 to get one free of charge over the telephone. Be prepared to provide the following information: (1) Company name; (2) Company address; (3) Company telephone number; (4) Line of business; (5) Chief executive officer/key manager; (6) Date the company was started; (7) Number of people employed by the company; and; (8) Company affiliation.

BLOCK 4: Check only one. Note that all subcontract award data reported on this form represents activity since the inception of the contract through the date indicated in this block.

BLOCK 5: Check whether this report is a "Regular," "Final," and/or "Revised" report. A "Final" report should be checked only if the contractor has completed the contract or subcontract reported in Block 7. A "Revised" report is a change to a report previously submitted for the same period.

BLOCK 6: Identify the department or agency administering the majority of subcontracting plans.

BLOCK 7: Indicate whether the reporting contractor is submitting this report as a prime contractor or subcontractor and the prime contract or subcontract number.

BLOCK 8: Enter the name and address of the Federal department or agency awarding the contract or the prime contractor awarding the subcontract.

BLOCK 9: Check the appropriate block to indicate whether indirect costs are included in the dollar amounts in blocks 10a through 14. To ensure comparability between the goal and actual columns, the contractor may include indirect costs in the actual column only if the subcontracting plan included indirect costs in the goal.

BLOCKS 10a through 14: Under "Current Goal," enter the dollar and percent goals in each category (SB, SDB, WOSB, and HUBZone SB) from the subcontracting plan approved for this contract. (If the original goals agreed upon at contract award have been revised as a result of contract

modifications, enter the original goals in Block 15. The amounts entered in Blocks 10a through 14 should reflect the revised goals.) Under "Actual Cumulative," enter actual subcontract achievements (dollar and percent) from the inception of the contract through the date of the report shown in Block 4. In cases where indirect costs are included, the amounts should include both direct awards and an appropriate prorated portion of indirect awards.

BLOCK 10a: Report all subcontracts awarded to SBs including subcontracts to SDBs, WOSBs, and HUBZone SBs. For DOD, NASA, and Coast Guard contracts, include subcontracting awards to HBCUs and MIs.

BLOCK 10b: Report all subcontracts awarded to large businesses (LBs).

BLOCK 10c: Report on this line the total of all subcontracts awarded under this contract (the sum of lines 10a and 10b).

BLOCKS 11 through 14: Each of these items is a subcategory of Block 10a. Note that in some cases the same dollars may be reported in more than one block (e.g., SDBs owned by women).

BLOCK 11: Report all subcontracts awarded to SDBs (including women-owned and HUBZone SB SDBs). For DOD, NASA, and Coast Guard contracts, include subcontract awards to HBCUs and MIs.

BLOCK 12: Report all subcontracts awarded to Women-Owned firms (including SDBs and HUBZone SBs owned by women).

BLOCK 13 (For contracts with DoD, NASA, and Coast Guard): Report all subcontracts with HBCUs/MIs. Complete the column under "Current Goal" only when the subcontracting plan establishes a goal.

BLOCK 14: Report all subcontracts awarded to HUBZone SBs (including women-owned and SDB HUBZone SBs).

BLOCK 15: Enter a short narrative explanation if (a) SB, SDB, WOSB, or HUBZone SB accomplishments fall below that which would be expected using a straight-line projection of goals through the period of contract performance; or (b) if this is a final report, any one of the three goals was not met.

DEFINITIONS

1. Commercial item means a product or service that satisfies the definition of commercial item in Section 2.101 of the Federal Acquisition Regulation.

2. Commercial plan means a subcontracting plan, including goals, that covers the offeror's fiscal year and that applies to the entire production of commercial items sold by either the entire company or a portion thereof (e.g., division, plant, or product line).

3. Subcontract means a contract, purchase order, amendment, or other legal obligation executed by the prime contractor/subcontractor calling for supplies or services required for the performance of the original contract or subcontract.

4. Direct Subcontract Awards are those that are identified with the performance of one or more specific Government contract(s).

5. Indirect costs are those which, because of incurrence for common or joint purposes, are not identified with specific Government contracts; these awards are related to Government contract performance but remain for allocation after direct awards have been determined and identified to specific Government contracts.

DISTRIBUTION OF THIS REPORT

For the Awarding Agency or Contractor:

The original copy of this report should be provided to the contracting officer at the agency or contractor identified in Block 8. For contracts with DOD, a copy should also be provided to the Defense Logistics Agency (DLA) at the cognizant Defense Contract Management Area Operations (DCMAO) office.

For the Small Business Administration (SBA):

A copy of this report must be provided to the cognizant Commercial Market Representative (CMR) at the time of a compliance review. It is NOT necessary to mail the SF 294 to SBA unless specifically requested by the CMR.

STANDARD FORM 294 (REV. 12-96) BACK

# SUMMARY SUBCONTRACT REPORT
### (See instructions on reverse)

| | |
|---|---|
| **Public reporting burden** for this collection of information is estimated to average 12.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405. | OMB No.: 9000-0007<br>Expires:  06/30/2000 |

## 1. CORPORATION, COMPANY OR SUBDIVISION COVERED

**a. COMPANY NAME**

**b. STREET ADDRESS**

**c. CITY**          **d. STATE**   **e. ZIP CODE**

**2. CONTRACTOR IDENTIFICATION NUMBER**

**3. DATE SUBMITTED**

**4. REPORTING PERIOD:**
- ☐ OCT 1 - MAR 31
- ☐ OCT 1 - SEPT 30
- YEAR

**5. TYPE OF REPORT**
- ☐ REGULAR
- ☐ FINAL
- ☐ REVISED

## 6. ADMINISTERING ACTIVITY (Please check applicable box)

- ☐ ARMY
- ☐ NAVY
- ☐ AIR FORCE
- ☐ DEFENSE LOGISTICS AGENCY
- ☐ NASA
- ☐ GSA
- ☐ DOE
- ☐ OTHER FEDERAL AGENCY (Specify)

## 7. REPORT SUBMITTED AS (Check one)

- ☐ PRIME CONTRACTOR
- ☐ BOTH
- ☐ SUBCONTRACTOR

## 8. TYPE OF PLAN

- ☐ INDIVIDUAL
- ☐ COMMERCIAL

IF PLAN IS A COMMERCIAL PLAN, SPECIFY THE PERCENTAGE OF THE DOLLARS ON THIS REPORT ATTRIBUTABLE TO THIS AGENCY. ▶

## 9. CONTRACTOR'S MAJOR PRODUCTS OR SERVICE LINES

| a | | c | |
|---|---|---|---|
| b | | d | |

## CUMULATIVE FISCAL YEAR SUBCONTRACT AWARDS
### (Report cumulative figures for reporting period in Block 4)

| TYPE | WHOLE DOLLARS | PERCENT (To nearest tenth of a %) |
|---|---|---|
| **10a. SMALL BUSINESS CONCERNS** (Include SDB, WOSB, HBCU/MI, HUBZone SB) (Dollar Amount and Percent of 10c.) | | |
| **10b. LARGE BUSINESS CONCERNS** (Dollar Amount and Percent of 10c.) | | |
| **10c. TOTAL** (Sum of 10a and 10b.) | | |
| **11. SMALL DISADVANTAGED (SDB) CONCERNS** (Include HBCU/MI) (Dollar Amount and Percent of 10c.) | | 100.0% |
| **12. WOMEN-OWNED SMALL BUSINESS (WOSB) CONCERNS** (Dollar Amount and Percent of 10c.) | | |
| **13. HISTORICALLY BLACK COLLEGES AND UNIVERSITIES (HBCU) AND MINORITY INSTITUTIONS (MI)** (If applicable) (Dollar Amount and Percent of 10c.) | | |
| **14. HUBZONE SMALL BUSINESS (HUBZone SB) CONCERNS** (Dollar Amount and Percent of 10c.) | | |

**15. REMARKS**  USMS Contract Number:

10a.        ; 11.        ; 12.        ;  13.        List number of actions for the following

;  14.        .

## 16. CONTRACTOR'S OFFICIAL WHO ADMINISTERS SUBCONTRACTING PROGRAM

**a. NAME**       **b. TITLE**       **c. TELEPHONE NUMBER**  AREA CODE  NUMBER

## 17. CHIEF EXECUTIVE OFFICER

**a. NAME**       **c. SIGNATURE**

**b. TITLE**      **d. DATE**

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is not usable

STANDARD FORM 295 (REV.12-98)
Prescribed by GSA - FAR (48 CFR) 53.219(e)

## Section J - Attachment 3(B)

GENERAL INSTRUCTIONS

1.  This report is not required from small businesses.

2.  This form collects subcontract award data from prime contractors/subcontractors that: (a) hold one or more contracts over $500,000 (over $1,000,000 for construction of a public facility); and (b) are required to report subcontracts awarded to Small Business (SB), Small Disadvantaged Business (SDB), Women-Owned Small Business (WOSB), and HUBZone Small Business (HUBZone SB) concerns under a subcontracting plan. For the Department of Defense (DOD), the National Aeronautics and Space Administration (NASA), and the Coast Guard, this form also collects subcontract award data for Historically Black Colleges and Universities (HBCUs) and Minority Institutions (MIs).

3.  This report must be submitted semi-annually (for the six months ended March 31st and the twelve months ended September 30th) for contracts with the Department of Defense (DOD) and annually (for the twelve months ended September 30th) for contracts with civilian agencies, except for contracts covered by an approved Commercial Plan (see special instructions in right-hand column). Reports are due 30 days after the close of each reporting period.

4.  This report may be submitted on a corporate, company, or subdivision (e.g., plant or division operating on a separate profit center) basis, unless otherwise directed by the agency awarding the contract.

5.  If a prime contractor/subcontractor is performing work for more than one Federal agency, a separate report shall be submitted to each agency covering only that agency's contracts, provided at least one of that agency's contracts is over $500,000 (over $1,000,000 for construction of a public facility) and contains a subcontracting plan. (Note that DOD is considered to be a single agency; see next instruction.)

6.  For DOD, a consolidated report should be submitted for all contracts awarded by military departments/agencies and/or subcontracts awarded by DOD prime contractors. However, DOD contractors involved in construction and related maintenance and repair must submit a separate report for each DOD component.

7.  Only subcontracts involving performance within the U.S., its possessions, Puerto Rico, and the Trust Territory of the Pacific Islands should be included in this report.

8.  Purchases from a corporation, company, or subdivision that is an affiliate of the prime/subcontractor are not included in this report.

9.  Subcontract award data reported on this form by prime contractors/subcontractors shall be limited to awards made to their immediate subcontractors. Credit cannot be taken for awards made to lower tier subcontractors.

10.  See special instructions in right-hand column for Commercial Plans.

SPECIFIC INSTRUCTIONS

BLOCK 2: For the Contractor Identification Number, enter the nine-digit Data Universal Numbering System (DUNS) number that identifies the specific contractor establishment. If there is no DUNS number available that identifies the exact name and address entered in Block 1, contact Dun and Bradstreet Information Services at 1-800-333-0505 to get one free of charge over the telephone. Be prepared to provide the following information: (1) Company name; (2) Company address; (3) Company telephone number; (4) Line of business; (5) Chief executive officer/key manager; (6) Date the company was started; (7) Number of people employed by the company; and (8) Company affiliation.

BLOCK 4: Check only one. Note that March 31 represents the six months from October 1st and that September 30th represents the twelve months from October 1st. Enter the year of the reporting period.

BLOCK 5: Check whether this report is a "Regular," "Final," and/or "Revised" report. A "Final" report should be checked only if the contractor has completed all the contracts containing subcontracting plans awarded by the agency to which it is reporting. A "Revised" report is a change to a report previously submitted for the same period.

BLOCK 6: Identify the department or agency administering the majority of subcontracting plans.

BLOCK 7: This report encompasses all contracts with the Federal Government for the agency to which it is submitted, including subcontracts received from other large businesses that have contracts with the same agency. Indicate in this block whether the contractor is a prime contractor, subcontractor, or both (check only one).

BLOCK 8: Check only one. Check "Commercial Plan" only if this report is under an approved Commercial Plan. For a Commercial Plan, the contractor must specify the percentage of dollars in Blocks 10a through 14 attributable to the agency to which this report is being submitted.

BLOCK 9: Identify the major product or service lines of the reporting organization.

BLOCKS 10a through 14: These entries should include all subcontract awards resulting from contracts or subcontracts, regardless of dollar amount, received from the agency to which this report is submitted. If reporting as a subcontractor, report all subcontracts awarded under prime contracts. Amounts should include both direct awards and an appropriate prorated portion of indirect awards. (The indirect portion is based on the percentage of work being performed for the organization to which the report is being submitted in relation to other work being performed by the prime contractor/subcontractor.) Do not include awards made in support of commercial business unless "Commercial" is checked in Block 8 (see Special Instructions for Commercial Plans in right-hand column).

Report only those dollars subcontracted this fiscal year for the period indicated in Block 4.

BLOCK 10a: Report all subcontracts awarded to SBs including subcontracts to SDBs, WOSBs, and HUBZone SBs. For DOD, NASA, and Coast Guard, include subcontracting awards to HBCUs and MIs.

BLOCK 10b: Report all subcontracts awarded to large businesses (LBs).

BLOCK 10c: Report on this line the grand total of all subcontracts (the sum of lines 10a and 10b).

BLOCKS 11 and 14: Each of these items is a subcategory of Block 10a. Note that in some cases the same dollars may be reported in more than one block (e.g., SDBs owned by women); likewise subcontracts to HBCUs or MIs should be reported on both Block 11 and 12.

BLOCK 11:  Report all subcontracts awarded to SDBs (including women-owned and HUBZone SB SDBs). For DOD, NASA, and Coast Guard contracts, include subcontract awards to HBCUs and MIs.

BLOCK 12:  Report all subcontracts awarded to Women-Owned Small Business firms (including SDBs and HUBZone SBs owned by women).

BLOCK 13 (For contracts with DOD, NASA, and Coast Guard): Enter the dollar value of all subcontracts with HBCUs/MIs.

BLOCK 14:  Report all subcontracts awarded to HUBZone SBs (including women-owned and SDB HUBZone SBs).

SPECIAL INSTRUCTIONS FOR COMMERCIAL PLANS

1.  This report is due on October 30th each year for the previous fiscal year ended September 30th.

2.  The annual report submitted by reporting organizations that have an approved company-wide annual subcontracting plan for commercial items shall include all subcontracting activity under commercial plans in effect during the year and shall be submitted in addition to the required reports for other-than-commercial items, if any.

3.  Enter in Blocks 10a through 14 the total of all subcontract awards under the contractor's Commercial Plan. Show in Block 8 the percentage of this total that is attributable to the agency to which this report is being submitted. This report must be submitted to each agency from which contracts for commercial items covered by an approved Commercial Plan were received.

DEFINITIONS

1.  Commercial item means a product or service that satisfies the definition of commercial item in Section 2.101 of the Federal Acquisition Regulation.

2.  Commercial plan means a subcontracting plan, including goals, that covers the offeror's fiscal year and that applies to the entire production of commercial items sold by either the entire company or a portion thereof (e.g., division, plant, or product line).

3.  Subcontract means a contract, purchase order, amendment, or other legal obligation executed by the prime contractor/subcontractor calling for supplies or services required for the performance of the original contract or subcontract.

4.  Direct Subcontract Awards are those that are identified with the performance of one or more specific Government contract(s).

5.  Indirect Subcontract Awards are those which, because of incurrence for common or joint purposes, are not identified with specific Government contracts; these awards are related to Government contract performance but remain for allocation after direct awards have been determined and identified to specific Government contracts.

SUBMITTAL ADDRESSES FOR ORIGINAL REPORT

For DOD Contractors, send reports to the cognizant contract administration office as stated in the contract.

For Civilian Agency Contractors, send reports to awarding agency:

1.  NASA: Forward reports to NASA, Office of Procurement (HS), Washington, DC 20546

2.  OTHER FEDERAL DEPARTMENTS OR AGENCIES: Forward report to the OSDBU Director unless otherwise provided for in instructions by the Department or Agency.

FOR ALL CONTRACTORS:

SMALL BUSINESS ADMINISTRATION (SBA): Send "info copy" to the cognizant Commercial Market Representative (CMR) at the address provided by SBA. Call SBA Headquarters in Washington, DC at (202) 205-6475 for correct address if unknown.

STANDARD FORM 295 (REV. 12-96) BACK

**SAMPLE WAGE / PRICE ADJUSTMENT SPREADSHEET**

Distict Headquarters BLC — Wage Det XX-1111(R1) 01/01/97

Min. Wage $11.84

Current Contract Composite Wage $10.00

Current Contract Hourly Price $14.83

Vacation 13 | Holiday 10 | Uniform Allowance $0.00

at $.11 now

FICA 0.0765 | Workers Comp. XX-1111(R1) 0.038 | BLC Min. Wage $11.84

HIwy $.90-$.90 $0.00

**Part A - Categories 1, 2, and 3**

| SLC | # Pos s 2007 | Hours per month* yrs / 18 mo | Pos. Type | Current Contract Rate | Actual Rate | Applicable W/D Rate | Diff. in Rate | Subtotal | Vacation | Holiday | Uniform Allowance | HIwy | Rate of Increase Plat Fringe | FICA | Workers Comp. | Burden Increase Rate | Annual Projected Hours | Total Price Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Smith, A. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, B. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, C. | 1003.5 | 83.63 | L | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 1003.50 | $2,666.19 |
| Smith, D. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, E. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, F. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, G. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, H. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, I. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, J. | 2007 | 167.25 | E | $10.00 | $11.00 | $11.84 | $0.84 | $0.84 | $0.04 | $0.04 | $0.00 | $0.00 | $0.92 | $0.07 | $0.03 | $1.02 | 2007.00 | $2,043.50 |
| Smith, K. | 1003.5 | 83.63 | L | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 1003.50 | $2,666.19 |
| Smith, L. | 1003.5 | 83.63 | L | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 1003.50 | $2,666.19 |
| Smith, M. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, N. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, O. | 2007 | 167.25 | E | $10.00 | $8.65 | $11.84 | $2.19 | $2.19 | $0.10 | $0.10 | $0.00 | $0.00 | $2.39 | $0.18 | $0.08 | $1.96 | 2007.00 | $5,332.38 |
| Smith, P. | 1003.5 | 83.63 | L | $10.00 | $11.00 | $11.84 | $0.84 | $0.84 | $0.04 | $0.04 | $0.00 | $0.00 | $0.92 | $0.07 | $0.03 | $1.02 | 1003.50 | $1,021.85 |

Slt Lake City    15 ( 2 )

Total Positions    15 ( 2 )

**Section J - Attachment 3(D)**

Page 2 of 2

## SAMPLE WAGE / PRICE ADJUSTMENT SPREADSHEET

**Base Year**

| | |
|---|---|
| +Uniform Purchase | 325.00 |
| Physical Exam | 50.00 |
| Increase | $375.00 |

**CATEGORY 5**

| | | |
|---|---|---|
| Base Wage | | 15.00 |
| FICA | 7.65% | 1.11 |
| State Unemploym | FIXED | 0.00 |
| Federal Unemploy | FIXED | 0.00 |
| Workers Compen | 2.53% | 0.37 |
| General Liability | FIXED | 0.20 |
| G & A | FIXED | 0.99 |
| Profit | FIXED | 0.61 |
| | | $18.28 |

Section J Attachment 3D

*** FORMAT THIS FILE USING FILE, PROPERTIES, and select 'LANDSCAPE'.

# Travel Voucher Summary

## 1. Voucher

Local Voucher No.  Submit Org.  Vouch Date  Voucher Type
USMS
☐ Original  ☐ ReClaim

Ref Doc No.  Preparer's Name

## 2. Traveler

Name (FNF)

SSN

☐ 1. Employee  ☐ 2. Contractor  ☐ 3. Invitational  ☐ 4. Other

Address

City  State AL  Zip

Country  USA

☐ Employee Payment Notification  Network ID

## 3. Purpose

Type Travel  Travel Purpose
☐ A. TDY  ☐ A. Operational
☐ B. Ext TDY (Over 30 Days)  ☐ B. Training
☐ C. Taxable Ext TDY  ☐ C. Meeting/Conference
☐ D. MS Ops

## 4. Obligation Liquidation

Traveler YRegDoc  Obl Llq
☐ Final  ☐ Partial

## 5. Itinerary

Trip Began (MMDDYY)  (HH:MM)

Trip Ended (MMDDYY)  (HH:MM)

☐ 1. Domestic  ☐ 2. OCONUS  ☐ 3. Foreign

Highest Class of Travel:
☐ 1. Coach  ☐ 2. Premium  ☐ 3. First Class

Reason for Upgrade:
☐ 1. Coach not available  ☐ 5. Cost Savings
☐ 2. Emp Disability  ☐ 6. Payed by NonFed
☐ 3. Security  ☐ 7. Travel GT 14 hrs
☐ 4. Foreign—no coach  ☐ 8. Other
☐ 9. NA

Primary Destination:

State AL  City

☐ Multiple Destinations

## 6. Expense Summary

### Standard Travel Expenses

Traveler Paid Transportation

Lodging Total (auto-calculated from back)

Ml & E Total  "

Mileage Total  "

Car Rental  "

ATM Fees  "

Taxi/Limo  "

Business Calls  "

Personal Calls  "

Parking  "

### Other Expenses

| Item Desc | SOC | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Total Voucher (auto-calculated)

| Disposition | |
|---|---|
| Advance Repayment |  |
| Taxes Withheld Fed |  |
| Taxes Withheld State |  |

Amount to Traveler (auto-calculated)

DisbMode
☐ 1. Dir Dep  ☐ 2. Tres  ☐ 3. Draft  ☐ 9. None

**Certifying Official Sign Here**
This voucher is certified correct and proper for payment.

Date:

## 7. Program Distribution

| Acct Class | PGM | AIN | Project | Case | % |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  | Total |  % |

## 8. Approval

Note: Falsification of an item in an expense account works a forfeiture of claim (28 U.S.C. 2514) and may result in a fine of not more than $10,000 or imprisonment for not more than 5 years or both (18 U.S.C. 287.1 cl 70).

**Traveler Sign Here**
I certify that this voucher is true and collect to the best of my knowledge and belief and that payment or credit has not been received by me.

Date:

**Approving Official Sign Here**
The amounts claimed on this voucher are approved official travel expenses, which appear to be reasonable for the travel performed.

Date:

Draft $25

FS/FASSG November 7, 1998; USMS Automated 3:00

## Section J - Attachment 3(E)(I)

# Daily Expense Report Summary

Enter expenses in categories provided below. Enter other expenses on Box 6 on page 1.

| Travel Day | ST | City/County | Lodging | M&IE | Mileage | Car Rental | ATM Fee | Taxi/Limo | Business Calls | Personal Calls | Parking | Optional Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **TOTALS:** | | | | | | | | | | | | |

Section I - Attachment 3(E)(2)

# TRAVEL AUTHORIZATION AND ADVANCE

## 1. Voucher Information

| Local Vch No | Submit Org | | Vouch Date | Ref Doc No | Preparer's Name | FMIS Upload |
|---|---|---|---|---|---|---|

Auth Vcn Type ☐ Original ☐ Adv only ☐ Cancel   FMIS Upload ○ Yes ○ No

Traveler

YRegDoc    ActClass

SSN

---

## 2. Mode of Transportation Authorized

☐ By Common Carrier
☐ By Gov-Furnished Auto
☐ By Rental Vehicle
☐ By Privately Owned Vehicle
☐ POV Determined to be Most Advantageous to Government
☐ Cost not to Exceed that of Common Carrier
☐ Based on Cost of Gov Furnished Auto

Mileage Rate Authorized
☐ Other

## 3. Mode of Subsistence Authorized

☐ Actual subsistence up to _____ per day

Actual subsistence requires approval by appropriate authorizing official

☐ Per diem based on lodging plus meals and incidental expenses NTE GSA Location Rates

☐ Extended TDY (Reduced Rate)

## 4. Planned Itinerary

From:

| | State | City | |
|---|---|---|---|
| Total | | | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

☐ Foreign travel.

Must be approved as required by DOJ travel regulations

Departure Date

Return Date

## 5. Estimated Cost

| | Rate: | | | |
|---|---|---|---|---|
| | Lodging | M&IE | Days | Estimate |

Transportation

Oth Amt

Total

Advance Amt:

---

## 6. Other Authorizations

☐ 1. Use of Premium Class   Additional Cost:
☐ 2. Use of foreign flag carrier  ☐ 3. Leave in conj w/travel
☐ 4. Other Description

## 7. Advance Disbursement

☐ 1 DirDep  ☐ 2 Tres  ☐ 3 Draft  ☐ 4 Cash  ☐ 5 None   Draft Site

Address

Address

City    State   ZIP

Country

---

## 8. Other Descriptive Information

Description

Program    Project    Budget Auth No (8 Alpha)   Org Mgt Field (Numeric)

Bill to:   Case

Type Travel
☐ A. TDY        ☐ B. Ext TDY (Over 30 Days)
☐ C. Taxable Ext TDY  ☐ D. PCS (NonNFC)   ☐ X. N/A

Trav Purpose
☐ A. Operational  ☐ B. Training  ☐ C. Meeting/Conf  ☐ D. House Hunting
☐ E. PCS Relocation  ☐ X. N/A

Justification (if appropriate)

---

## 9. AUTHORIZATION

You are authorized to travel at government expense in accordance with DOJ travel regulations, under the conditions outlined in this authorization.

Authorizer

Advance Authorized as described in Box 5
☐ Yes
☐ No   Authorizer:

Authorizer Signature:

Traveler

Cash Advance of:

Received by:

Signature:    Date:

A voucher must be submitted within 10 workdays after travel is completed or monthly for persons in a continous travel status.

This form was electronically produced via an FMIS InForms Application (TravelPA)

US Dept of Justice JMD/FS/FASSG Nov 9, 1995

---

Section J - Attachment 3(F)

| CLAIM FOR REIMBURSEMENT FOR EXPENDITURES OFFICIAL BUSINESS | 1. DEPARTMENT, ESTABLISHMENT, BUREAU, DIVISION OR OFFICE<br><br>USMS- | 2. VOUCHER NUMBER |
|---|---|---|
| | | 3. SCHEDULE NUMBER |

**Read the Privacy Act Statement on Page 2 of this form.**

| | 5. PAID BY |
|---|---|

**4. CLAIMANT**

a. NAME (Last, first, middle initial)

b. SOCIAL SECURITY NUMBER

c. MAILING ADDRESS (Include ZIP Code)

600 Army Navy Drive, Arlington, VA 22202

d. OFFICE TELEPHONE NUMBER

**6. EXPENDITURES** (If fare claimed in col. (g) exceeds charge for one person, show in col (h) the number of additional persons which accompanied the claimant.)

Show appropriate code in col. (b):
A - Local travel
B - Telephone or telegraph, or
C - Other Expenses (itemized)

(Explain expenditures in specific detail.)

| DATE | CODE | (c) FROM | (d) TO | MILEAGE RATE (dollars) | AMOUNT CLAIMED | | | |
|---|---|---|---|---|---|---|---|---|
| (a) | (b) | | | NO. OF MILES (e) | MILEAGE (f) | FARE OR TOLL (g) | ADD. PERSONS (h) | TIP AND MISC. (i) |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

*If additional space is required continue on Page 2.*

SUBTOTALS CARRIED FORWARD FROM PAGE 2.

**7. AMOUNT CLAIMED** (Total of cols (f), (g) and (i).) ▶ | TOTALS

**8.** This claim is approved. Long distance telephone calls, if shown, are certified as necessary in the interest of the Government. (Note: If long distance calls are included, the approving official must have been authorized, in writing, by the head of the department or agency to so certify (31 U.S. C. 680a).)

*Sign Original Only*

| APPROVING OFFICIAL SIGN HERE ▶ | | DATE |
|---|---|---|

**9.** This claim is certified correct and proper for payment.

*Sign Original Only*

| AUTHORIZED CERTIFYING OFFICER SIGN HERE ▶ | | DATE |
|---|---|---|

*ACCOUNTING CLASSIFICATION*

**10.** I certify that this claim is true and correct to the best of my knowledge and belief and that payment or credit has not been received by me.

PAYMENT DESIRED   *Sign Original Only*
☐ CHECK   ☐ CASH

| CLAIMANT SIGN HERE ▶ | | DATE |
|---|---|---|

**11. CASH PAYMENT RECEIPT**

| a. PAYEE (Signature) | b. DATE |
|---|---|
| | c. AMOUNT |

**12. PAYMENT MADE BY CHECK NO.**

**Section J - Attachment 3(G)**

STANDARD FORM 1164 (REV. 11-77)
Prescribed by GSA, FPMR (CFR 41) 101-7
Automatred 12/00

6. EXPENDITURES - Cont'd.

| DATE | C O D E | Show appropriate code in col. (b):<br>A - Local travel<br>B - Telephone or telegraph, or<br>C - Other Expenses (itemized)<br><br>*(Explain expenditures in specific detail.)* | | MILEAGE RATE (dollars) | AMOUNT CLAIMED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| (a) | (b) | (c) FROM | (d) TO | NO. OF MILES (e) | MILEAGE (f) | FARE OR TOLL (g) | ADD. PERSONS (h) | TIP AND MISC. (I) |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

TOTAL ▶

**(These numbers will automatically appear on Page 1)**

In compliance with the Privacy Act of 1974, the following information is provided: Solicitation of the information on this form is authorized by 5 U.S.C. Chapter 57 as implemented by the Federal Travel Regulations (FPMR 101-7), E.O. 11609 of July 22, 1971, E.O. 11012 of March 27, 1962, E.O. 9397 of November 22, 1943, and 26 U.S.C. 601 (b) and 6109. The primary purpose of the requested information is to determine payment or reimbursement to eligible individuals for allowable travel and/or other expenses incurred under appropriate administrative authorization and to record and maintain costs of such reimbursements to the Government. The information will be used by Federal agency officers and employees who have a need for the information in the performance of their official duties. The information may be disclosed to appropriate Federal, State, local, or foreign agencies, when relevant to civil, criminal, or regulatory investigations or prosecutions, or when pursuant to a requirement by this agency in connection with the hiring or firing of an employee, the issuance of a security clearance, or investigations of the performance of official duty while in Government service. Your Social Security Account Number (SSN) is solicited under the authority of the Internal Revenue Code (26 U.S.C. 601 (b) and 6109) and E.O. 9397, November 22, 1943, for use as a taxpayer and/or employee identification number; disclosure is MANDATORY on vouchers claiming payment or reimbursement which is, or may be, taxable income. Disclosure of your SSN and other requested information is voluntary in all other instances; however, failure to provide the information (other than SSN) required to

Standard Form 1034
Revised October 1987
Department of the Treasury
1 TFM 4-2000

**PUBLIC VOUCHER FOR PURCHASES**
**AND SERVICES OTHER THAN PERSONAL**

VOUCHER NO.

| U.S. DEPARTMENT, BUREAU, OR ESTABLISHMENT AND LOCATION | DATE VOUCHER PREPARED | SCHEDULE NO. |
|---|---|---|
| | CONTRACT NUMBER AND DATE | PAID BY |
| | REQUISITION NUMBER AND DATE | |

PAYEE'S NAME AND ADDRESS

DATE INVOICE RECEIVED

DISCOUNT TERMS

PAYEE'S ACCOUNT NO.

| SHIPPED FROM | TO | WEIGHT | GOVERNMENT B/L NO. |
|---|---|---|---|

| NUMBER AND DATE OF ORDER | DATE OF DELIVERY OR SERVICE | ARTICLES OR SERVICES (Enter description, item number of contract or Federal supply schedule, and other information deemed necessary) | QUAN-TITY | UNIT COST | PER | AMOUNT (1) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

(Use continuation sheets) if necessary        (Payee must NOT use the space below)

**TOTAL**

| PAYMENT | APPROVED FOR = $ | EXCHANGE RATE = $1.00 | DIFFERENCE $ |
|---|---|---|---|
| ☐ PROVISIONAL | BY (2) | | |
| ☐ COMPLETE | | | |
| ☐ PARTIAL | | | |
| ☐ FINAL | | | Amount verified; correct |
| ☐ PROGRESS | TITLE | | (Signature or initials)          for |
| ☐ ADVANCE | | | |

Pursuant to authority vested in me, I certify that this voucher is correct and proper for payment.

Date _____        Authorized Certifying Officer (2) _____        (Title) _____

**ACCOUNTING CLASSIFICATION**

| PAID BY | CHECK NUMBER | ON ACCOUNT OF U.S. TREASURY | CHECK NUMBER | ON (Name of bank) |
|---|---|---|---|---|
| | CASH | DATE | PAYEE 3 | |

(1) When stated in foreign currency, state name of currency

PER

(2) If the ability to certify and authority to approve are combined in one person, one signature only is necessary; otherwise the approving officer will sign in the space provided, over his/her official title.

TITLE

(3) When a voucher is receipted in the name of a company or corporation, the name of the person writing the company or corporate name as well as the capacity in which he/she signs, must appear. For example: John Doe Company, per John.

**PRIVACY ACT STATEMENT**

The information requested on this form is required under the provisions of 31 U.S.C. 82b and 82c, for the purpose of disbursing Federal money. The information requested is to identify the particular creditor and the amounts to be paid. Failure to furnish this information will hinder discharge of the payment obligation.

SF-1034
Automated 01/01

Section J - Attachment 3(H)

## CSO INCIDENT REPORT

| Report Date | Reporting District | Reported By |
|---|---|---|
|  |  |  |

**Type of Incident:**



**DESCRIPTION OF INCIDENT:**



_____
Site Supervisor/Lead CSO

_____
Witness By

**Section J - Attachment 3(I)**

**SECTION E: CIRCUIT SUMMARY**

Contract Number:

Reporting Period:

| District No. | District | Number of Authorized Positions | | | Monthly Activity | | | Comments |
|---|---|---|---|---|---|---|---|---|
| | | Full-time | Shared | Total | FY01 Enhancements | Current Vacancies | Authorized Transfers | |
| Example 36 | Maine | 2 | 2 | 4 | 1 | 0 | 0 | None. |
| 15 | DELAWARE | 13 | 4 | 17 | | | | |
| 50 | NEW JERSEY | 50 | 12 | 62 | | | | |
| 66 | EASTERN PENNSYLVANIA | 47 | 11 | 58 | | | | |
| 66 | MIDDLE PENNSYLVANIA | 36 | 8 | 44 | | | | |
| | WESTERN PENNSYLVANIA | 30 | 7 | 37 | | | | |
| 94 | VIRGIN ISLANDS | 12 | 2 | 14 | | | | |
| | TOTAL | 188 | 44 | 232 | 0 | | | |

Section J - Attachment J(J)

# SECTION XI BILLING INFORMATION

Contract Number:

Reporting Period:

## Third Judicial Circuit
*Fiscal Year 2001*

| | DE | NJ | E/PA | M/PA | W/PA | VI | |
|---|---|---|---|---|---|---|---|
| | Monthly Billing | | | | | | Cumulative Total |
| October | $ | $ | $ | $ | $ | $ | $ |
| November | $ | $ | $ | $ | $ | $ | $ |
| December | $ | $ | $ | $ | $ | $ | $ |
| January | $ | $ | $ | $ | $ | $ | $ |
| February | $ | $ | $ | $ | $ | $ | $ |
| March | $ | $ | $ | $ | $ | $ | $ |
| April | $ | $ | $ | $ | $ | $ | $ |
| May | $ | $ | $ | $ | $ | $ | $ |
| June | $ | $ | $ | $ | $ | $ | $ |
| July | $ | $ | $ | $ | $ | $ | $ |
| August | $ | $ | $ | $ | $ | $ | $ |
| September | $ | $ | $ | $ | $ | $ | $ |
| TOTAL: | $ | $ | $ | $ | $ | $ | $ |

USMS 09/00

# SECTION X: WORKHOURS

Contract Number:

Reporting Period:

## Third Judicial Circuit - Fiscal Year 2001

### MONTHLY STATISTICS (OF HOURS WORKED)

| District | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sept | REPORT CUMULATIVE TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Example - ME | | | | | | | | | | | | | |
| DE | | | | | | | | | | | | | |
| NJ | | | | | | | | | | | | | |
| E/PA | | | | | | | | | | | | | |
| M/PA | | | | | | | | | | | | | |
| W/PA | | | | | | | | | | | | | |
| VI | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | |

### ANNUAL STATISTICS (OF ACTUAL HOURS WORKED)

| District | District No. | Site Supervisors | CSO Positions | Contract Hours (Based on 2008 hrs/position) | REPORT CUMULATIVE HOURS WORKED |
|---|---|---|---|---|---|
| DE | 15 | 0 | 17 | 34,136 | |
| NJ | 50 | 1 | 62 | 126,504 | |
| E/PA | 66 | 1 | 58 | 118,472 | |
| M/PA | 67 | 1 | 44 | 90,360 | |
| W/PA | 68 | 1 | 37 | 76,304 | |
| VI | 94 | 0 | 14 | 28,112 | |
| TOTAL | | 4 | 232 | 474,888 | |

USMS 09/00

## 2.4   CHAPTER II SUMMARY

- CSOs are contract employees and not employees of the U.S. Government. However, in order to fully provide security services required by the contract, it is deemed essential that all CSOs have the power to enforce Federal law while on a Federal work site during duty hours and while performing contract duties.

- In this regard, all CSOs receive special, limited deputation through the U.S. Marshal. This deputation is limited to the extent that it will only apply while the CSO is on duty at the Federal worksite and in the performance of duties.

- The Firearms Policy states:

  A federal law enforcement officer may use deadly force only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person.

- The key elements of the Firearms Policy are:
  - Necessary
  - Reasonable Belief
  - Imminent Danger
  - Death or Serious Physical Injury

**Firearms Qualification**

- The course of fire is designed to simulate real situations and no deviation of ammunition, clothing, stance, or scoring is permitted. This qualification course of fire will be conducted with the following criteria:

  A.  Weapon
  B.  Ammunition
  C.  Firing Distance
  D.  Target
  E.  Clothing
  F.  Scoring
  G.  Qualification
  H.  Safety

1

**Section J - Attachment 4(A)**

## 2.2   FIREARMS POLICY/DEADLY FORCE

The Firearms Policy states:

A federal law enforcement officer may use deadly force only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical injury to the officer or to another person.

Key elements of the firearms policy are:

- ◆ Necessary
- ◆ Reasonable Belief
- ◆ Imminent Danger
- ◆ Death or Serious Physical Injury

**Deadly force**

Any force that is likely to cause death or serious physical injury.

**Permissible Uses**

The need to use deadly force arises when all other available means of preventing imminent and grave danger to officers or other persons have failed or would be likely to fail. Thus, employing deadly force is permissible when there is no safe alternative to using such force, and without it the officer or others would face imminent and grave danger. An officer is not required to place him or herself, another officer, a suspect, or the public in unreasonable danger of death or serious physical injury before using deadly force.

Determining whether deadly force is necessary may involve instantaneous decisions that encompass many factors, such as the likelihood that the subject will use deadly force on the officer or others if such force is not used by the officer; the officer's knowledge that the subject will likely acquiesce in arrest or recapture if the officer uses lesser force or no force at all; the capabilities of the subject; the subject's access to cover and weapons; the presence of other persons who may be at risk if force is not used; and the nature and the severity of the subject's criminal conduct or the danger posed.

Deadly force should never be used upon mere suspicion that a crime, no matter how serious, was committed, or simply upon the officer's determination that probable cause would support the arrest of the person being pursued or arrested for the commission of a crime. Deadly force may be used to prevent the escape of fleeing subject if there is probable cause to believe:

2

1) the subject has committed a felony involving the infliction or threatened infliction of serious physical injury or death, and
2) the escape of the subject would pose an imminent danger of death or serious physical injury to the officer or to another person.  As used in this policy, "imminent" has a broader meaning that "immediate" or "instantaneous."

The concept of "imminent" should be understood to be elastic, that is, involving a period of time dependent on the circumstances, rather that the fixed point of time implicit in the concept of "immediate" or "instantaneous."  Thus, a subject may pose an imminent danger even if he or she is not at that very moment pointing a weapon at the officer if, for example, he or she has a weapon within reach or is running for cover, carrying a weapon, or running to a place where the officer has reason to believe a weapon is available.

**Reasonable Belief**

For purposes of this policy, "probable cause", "reason to believe" and "reasonable belief" mean, that facts and circumstances, including the reasonable inferences drawn therefrom, known to the officer at the time of the use of deadly force would cause a reasonable officer to conclude that the point at issue is probably true.  The reasonableness of a belief or decision must be viewed from the perspective of the officer on the scene, who may often be forced to make split-second decisions in circumstances that are tense, unpredictable, and rapidly evolving.  Reasonableness is not to be viewed from the calm vantage point of hindsight.

**Intermediate Force**

If force other than deadly force could reasonably be expected to accomplish the same end, such as the arrest of a dangerous fleeing subject, without unreasonably increasing the danger to the officer or to others, then it must be used.

**Verbal Warning**

If possible and if to do so would not increase the danger to the officer or others, a verbal warning to submit to the authority of the officer shall be given prior to the use of deadly force.

**Warning Shots and Shooting to Disable**

Warning shots are not authorized.  Discharge of a firearm is usually considered to be permissible only under the same circumstances when deadly force may be used, that is, only when necessary to prevent loss of life or serious physical injury.  Warning shots themselves may pose dangers to the officer or others.

3

# United States Marshals Service



## Policy Directive

**Subject Index:**

Non-Lethal Devices
OC Spray
Baton, Expandable
Stun-Gun
STUNBELT

No.  99-09
January 29, 1999
File No.  0220

---

## NON-LETHAL DEVICES

I.   **PURPOSE:**  The purpose of this policy directive is to consolidate the previously issued policy notices that address the use and issuance of U.S. Marshals Service (USMS) approved intermediate weapons and devices.  In addition, this policy directive indicates which devices are authorized by the Service, and establishes procedures and reporting responsibilities.

II.  **AUTHORITY:**  The Director's authority to issue this directive governing non-lethal devices is set forth in 28 U.S.C. Section 561 (g).

III. **POLICY:**

A.  *Authorized Devices:* . Only the following non-lethal devices are authorized for use by a Deputy U.S. Marshal:

1.   Oleoresin Capsicum Aerosols (OC Spray);

2.   Expandable Baton, 21" electro less nickel with foam handle;

3.   Stun-Gun;

Page 1 of 6

    4.  Electronic Restraint Belt (STUNBELT); and

    5.  Items approved by the USMS for use by the Special Operations Group.

B.  Only the devices designated by the USMS may be used while in the performance of official duties. Identical equipment used by other law enforcement agencies may be substituted if prior consent has been obtained from district management. For the STUNBELT, substitution requires prior written consent from the Prisoner Services Division.

C.  Non-lethal devices shall be concealed from the general public when and where appropriate. A device should not be inspected or handled in view of the public unless for an operational purpose.

## IV. PROCEDURES:

A.  *Use of OC Spray:*

    1.  Whenever possible, a deputy should be upwind from the subject before using OC spray and should avoid entering the spray area. The deputy should maintain a safe distance from the subject of between two and ten feet. A single spray burst should be directed at the subject's eyes, nose and mouth. Additional burst(s) may be used if the initial or subsequent burst proves ineffective

    2.  A subject sprayed with an OC aerosol should not normally require medical treatment. However, when the person sprayed has been placed in a safe environment, the person should be decontaminated as directed in the approved USMS OC training program. If the subject's symptoms do not decrease after 45 minutes, the subject exhibits symptoms that are not consistent with the normal reactions to OC, or the subject requests medical attention, medical attention will be provided as soon as possible. Most OC substances will naturally dissipate and decontamination of clothing should not be necessary.

    3.  Subjects that have been sprayed shall be monitored continuously for indications of medical problems and shall not be left alone while in USMS custody.

    4.  OC spray may be employed against dogs and other animals when the deputy reasonably believes that the animal poses a danger to USMS personnel or other persons.

B.  *Use of the Expandable Baton:*

1.  There are several areas of the human body that if struck by an expandable baton would provide a measure of control over a resistant subject.  Since the objective is to control with a minimum possibility of permanent injury to the subject, certain body areas as identified in basic training and re-certification should be avoided if possible.

2.  The expandable baton should be carried in the issued holster on the deputy's non-handgun side.  While in the holster, tip end down, the baton is ready to be tactically drawn and utilized.

3.  Each deputy shall re-certify annually to continue carrying the expandable baton.

C.  *Use of the Stun-Gun or STUNBELT:*

1.  Before using a Stun-Gun or STUNBELT, the Deputy will undertake all reasonable measures to ensure that the prisoner has no existing medical conditions that would preclude use of the device.  The Stun-Gun or STUNBELT will not be used on prisoners known to have the following medical conditions:

    a.  Pregnancy;
    b.  Heart disease;
    c.  Multiple sclerosis, muscular dystrophy, or epilepsy; or
    d.  Any other medical condition known to pose a risk to the prisoner.

2.  Use is allowed where there is a reasonable belief that the prisoner poses a substantial escape risk or risk of injury or death to the deputy or others.  Activation of the STUNBELT is allowed when the prisoner purposely tampers with the device or takes actions to avoid constant visual supervision by the deputy.

3.  Before the STUNBELT can be applied, a deputy must first obtain verbal approval from an immediate supervisor or the official in charge of the assignment, if the supervisor is not available.  An employee who intends to carry a Stun-Gun should also first receive verbal approval from district management.  Use of the baton or OC Spray does not require prior approval.

4.  Prior to applying the STUNBELT, the deputy will advise the detainee that the belt is going to be placed on him or her, and that the belt will be activated under certain circumstances.  This notification will be accomplished by reading the *Notification of Electronic Restraint Belt Use* (Form USM-536) aloud to the detainee or by allowing the person to read the form.  The detainee will be given the opportunity to sign the

notification. If this is not possible, or the individual refuses, the deputy should record this information on the form.

5. Before using a STUNBELT in any court proceeding, the presiding judge will be fully informed of the USMS's intention to use the STUNBELT for security purposes. The responsible U.S. Attorney and the detainee's representative should also be informed of the rationale for STUNBELT usage and be given a description of how the STUNBELT operates. The STUNBELT will be covered to preclude any prejudicial influence of a jury member.

D. *Technical Problems*: If a non-lethal device does not function as designed, or should other technical problems occur, the deputy will complete the following steps:

1. Write a memorandum describing the problem, the conditions under which the problem occurred, and the identification (brand) or other nomenclature.

2. Send a copy of the memorandum to both the Assistant Director for Training and the Health and Safety Officer. It is not necessary to send the faulty device or weapon unless requested to do so.

E. *Aircraft Restrictions:*

1. OC Spray shall not be carried on commercial or USMS aircraft, either on the person or in checked baggage. Devices containing OC-based materials are designated as hazardous substances, and federal regulations prohibit the transport of such items aboard aircraft.

2. STUNBELTS may not be used aboard aircraft because FAA has not approved their usage. Batons and Stun-Guns may be carried subject to the restrictions set by the carrier.

F. *Storage:* Each deputy issued a non-lethal device is responsible for keeping the device under lock and key or in a protected area where limited or controlled access can be reasonably assured. The OC spray, when carried, will be in a secure, safe, and readily accessible location. Aerosol devices should not be stored in areas where externally high temperatures are likely to occur.

G. *Required Training:* Before using any non-lethal device, each deputy shall have successfully completed the required training program, including the re-certification. In addition, deputies will review the training material for the baton and OC spray annually. Initial and refresher training for non-lethal devices will be conducted by a certified

instructor and will be documented by the district/division office.  Documentation of training will serve as the authorization to possess, carry, and employ non-lethal devices.  If a deputy is unable to qualify with an authorized non-lethal device, the instructor will conduct and document remedial training necessary to attain qualification before the deputy is authorized to carry the device.

V.  **RESPONSIBILITIES:**

A.  *Deputy (U.S. Marshal):*  If a non-lethal device is used on a subject/detainee, the following steps will be taken:

1.  Provide medical attention immediately to any person who is obviously injured, alleges an injury, or requests medical attention.  When a chemical agent has been applied, first aid shall be administered as soon as practicable.  An injured subject will be transported to a medical facility for examination prior to further processing.  During transportation, the injured subject will be constantly monitored.  If the subject is unconscious or, in the opinion of the concerned deputy or supervisor, has an injury requiring medical attention beyond the capability afforded by training and issued first aid items, the deputy will request that an ambulance or emergency medical service respond to the scene;

2.  Report the incident to the immediate supervisor as soon as possible;

3.  Complete Form USM-133, *Firearms Discharge Assault Report.*  Submit, by mail or FAX, the completed form within 24 hours to the Office of Internal Affairs, U.S. Marshals Service, 600 Army Navy Drive, Suite 907 CS-3, Arlington, VA 22202-4210.  If a STUNBELT is activated, the Office of Internal Affairs will notify the Deputy Director; and

4.  Photograph and/or videotape any marks or injuries.  These should be documented with a measuring tape or ruler.  The photographs or videotape will serve as documentation of the size and location of the injuries related to the use of the device.  This material will be maintained with the incident documentation  (Form USM-133) in a secure file.

VI. **DEFINITIONS:**

A.  *Deputy (U.S. Marshal):*  Includes operational employees assigned to the 1811 job series, U.S. Marshal, an employee who has a valid special deputization, or an employee (or contract employee) who has been authorized specifically by the USMS to carry a non-lethal device as a requirement of his/her duty assignment.(i.e., Detention Enforcement Officer, Aviation Enforcement).

Page 5 of 6

B. *Non-lethal Force Device:*  An authorized device that is intended to be used to subdue a subject but not to cause serious physical injury or death.

C. *Oleoresin Capsicum Aerosols (OC Spray):*  An inflammatory agent that occurs in various peppers.  Oleoresin is a mixture of resin and essential oil occurring naturally in various plants.  Capsicum is any of several varieties of red peppers such as chili, cayenne, and bird.

D. *Stun-Gun:*  A device that directs an electrical charge that can be used to control a violent person.  This electrical charge can disorient, temporarily immobilize, and stun a person without causing permanent injury.

E. *STUNBELT:*  A restraining device that transmits an electrical charge that can be used to control a violent person.  The STUNBELT is activated by a remote control device.  For eight continuous seconds, the belt emits a 50,000 volt charge that can disorient, temporarily immobilize, and stun a person without causing permanent injury.

**Effective Date:**

2/11/99

**By Order of:**

Eduardo Gonzalez
Director
U.S. Marshals Service

**Cancels:**   United States Marshals Service *Policy and Procedures Manual,* paragraph 2.8-3, *Electronic Stun-Gun* (XR-500), dated 2/22/85; Policy Notice 94-003, *Expandable Batons;* Policy Notice 94-020, *Oleoresin Capsicum (OC) Aerosols;* and Policy Notice 96-002, *Electronic Restraint Belt.*

**Cross Reference:** Policy Directive 99-08, Use of Force.

**Proponent:**    Executive Services Division, Policy Center, 202/307-9480; FAX 202/307-9831.

This policy directive has been negotiated and approved by the International Council of U.S. Marshals Service Locals American Federation of Government Employees.

# COST ESTIMATE SUMMARY
## Section J- Attachment 1(C)

U.S. Department of Justice
U.S. Marshals Service
Circuit:
District:

Specification and Pricing Proposal Sheet

| Judicial Building/Facility | Estimated Number of LCSO/CSO Positions | | | Basic Rate Rate/Hour | | Start-up Costs Per Person | Overtime Rate | |
|---|---|---|---|---|---|---|---|---|
| | Full | Shared | Total | LCSO | CSO | LCSO/CSO | LCSO | CSO |
| **[1]** | | | | | | | | |
| Option Lot 1 | 8 | 3 | 11 | $ | $ | $ | $ | $ |
| Option Lot 2 | 8 | 3 | 11 | $ | $ | $ | $ | $ |
| Option Lot 3 | 8 | 3 | 11 | $ | $ | $ | $ | $ |
| Option Lot 4 | 8 | 3 | 11 | $ | $ | $ | $ | $ |
| Option Lot 5 | 8 | 3 | 11 | $ | $ | $ | $ | $ |
| **[2]** | | | | | | | | |
| Option Lot 1 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 2 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 3 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 4 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 5 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| **[3]** | | | | | | | | |
| Option Lot 1 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 2 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 3 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 4 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| Option Lot 5 | 3 | 1 | 4 | $ | $ | $ | $ | $ |
| **[4]** | | | | | | | | |
| Option Lot 1 | 1 | 1 | 2 | $ | $ | $ | $ | $ |
| Option Lot 2 | 1 | 1 | 2 | $ | $ | $ | $ | $ |
| Option Lot 3 | 1 | 1 | 2 | $ | $ | $ | $ | $ |
| Option Lot 4 | 1 | 1 | 2 | $ | $ | $ | $ | $ |
| Option Lot 5 | 1 | 1 | 2 | $ | $ | $ | $ | $ |
| **[5]** | | | | | | | | |
| Option Lot 1 | | | | $ | $ | $ | $ | $ |
| Option Lot 2 | | | | $ | $ | $ | $ | $ |
| Option Lot 3 | | | | $ | $ | $ | $ | $ |
| Option Lot 4 | | | | $ | $ | $ | $ | $ |
| Option Lot 5 | | | | $ | $ | $ | $ | $ |
| | 15 | 6 | 21 | | | | | |

**Cost Estimate Summary – Section J – Attachment 1(C)**

**Company Name:**

Circuit:
District:

| LCSO/CSO Total Pos | LCSO/CSO Total People | # Pos LCSO | # Pos CSO | Base Rate 2008 hrs LCSO | Base Rate 2008 hrs CSO | Startup each person | Overtime 20 hrs LCSO | Overtime 20 hrs CSO | Judical Building/Facility | Base Rate/Cat. 1 Straight Time LCSO | Base Rate/Cat. 1 Straight Time CSO | Start-up LCSO/CSO | Overtime LCSO | Overtime CSO | Estimated Cost of all Categories LCSO/CSO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | 14 | 1 | 10 | 2008 | 20080 | 14 | 20 | 200 | **[1]** Initial Period | $ | $ | $ | $ | $ | $ |
| 11 | 14 | 1 | 10 | 2008 | 20080 | 14 | 20 | 200 | Option Lot 1 | $ | $ | $ | $ | $ | $ |
| 11 | 14 | 1 | 10 | 2008 | 20080 | 14 | 20 | 200 | Option Lot 2 | $ | $ | $ | $ | $ | $ |
| 11 | 14 | 1 | 10 | 2008 | 20080 | 14 | 20 | 200 | Option Lot 3 | $ | $ | $ | $ | $ | $ |
| 11 | 14 | 1 | 10 | 2008 | 20080 | 14 | 20 | 200 | Option Lot 4 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | **[2]** Initial Period | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 1 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 2 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 3 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 4 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | **[3]** Initial Period | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 1 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 2 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 3 | $ | $ | $ | $ | $ | $ |
| 4 | 5 | 1 | 3 | 2008 | 6024 | 5 | 20 | 60 | Option Lot 4 | $ | $ | $ | $ | $ | $ |
| 2 | 3 | 1 | 1 | 2008 | 2008 | 3 | 20 | 20 | **[4]** Initial Period | $ | $ | $ | $ | $ | $ |
| 2 | 3 | 1 | 1 | 2008 | 2008 | 3 | 20 | 20 | Option Lot 1 | $ | $ | $ | $ | $ | $ |
| 2 | 3 | 1 | 1 | 2008 | 2008 | 3 | 20 | 20 | Option Lot 2 | $ | $ | $ | $ | $ | $ |
| 2 | 3 | 1 | 1 | 2008 | 2008 | 3 | 20 | 20 | Option Lot 3 | $ | $ | $ | $ | $ | $ |
| 2 | 3 | 1 | 1 | 2008 | 2008 | 3 | 20 | 20 | Option Lot 4 | $ | $ | $ | $ | $ | $ |

Estimated Quantities — Estimated Dollar Amount

# CIRCUIT COST ESTIMATE SUMMARY

Company Name: _____

Solicitation No: MS-01-R-0006

| DISTRICTS | INITIAL | OPTION 1 | | OPTION 2 | | OPTION 3 | | OPTION 4 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | $ | | $ | | $ | | $ | | $ |
| District Name | $ | | | | | | | | | $ |